403 So.2d 1321 (1981)
Freddie Lee HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 54561.
Supreme Court of Florida.
July 16, 1981.
*1322 Morton D. Aulls and H.D. Robuck, Jr., Tavares, for appellant.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Hall was convicted of first-degree murder and sentenced to death. We find no reversible error and affirm.
*1323 Hall and Mack Ruffin were indicted for the murders of Karol Hurst and Deputy Sheriff Lonnie Coburn. Hall was tried alone for the Hurst murder, which is the subject of this appeal.[1]
On February 21, 1978, Mrs. Hurst, a 21-year-old housewife who was seven months pregnant, left a Pantry Pride checkout counter in Leesburg, Florida, at 3:00 p.m. Her body was found at 3:00 p.m. on February 22, 1978, in Sumter County. She had been shot and sexually assaulted. In custody on the morning of February 22 for Deputy Coburn's death, Hall told a deputy sheriff how, on the previous day, he and Ruffin had sat in that Pantry Pride parking lot looking for a car to use in committing a robbery when he, Hall, accosted Mrs. Hurst and forced her into her car. Hall slid in behind the steering wheel and drove while Ruffin followed in his own car. They stopped in a wooded area where, according to Hall, Ruffin beat, sexually assaulted, and shot Mrs. Hurst.
At trial the evidence established that, after leaving the wooded area, the pair was seen at a convenience store in Hernando County. Their conduct in the store aroused suspicions and the clerk called the sheriff's office. Before a deputy arrived, Hall and Ruffin left the store. Shortly after their departure the clerk heard a shot and found Deputy Coburn dead on the ground behind the store. Coburn's weapon was missing, but under his body lay the weapon later shown to have killed Mrs. Hurst. Hall and Ruffin fled in the Hurst vehicle, which they had driven to the store, but, after a chase, they abandoned the car and fled on foot. Both men were caught shortly thereafter. They left Coburn's pistol, Mrs. Hurst's handbag, and groceries which she had bought that afternoon in the car.
Hall contends that the state has failed to prove him guilty of first-degree murder. The state presented the case to the jury on the theory that Hall and Ruffin did everything together. They planned the robbery together and drove together to the Pantry Pride parking lot to obtain a car. Hall drove the Hurst car to the wooded area while Ruffin followed in his own car. The two were together at the site of Mrs. Hurst's assault and death, at the convenience store where their actions drew suspicions, and when they fled in the stolen car. These circumstances were sufficient to convince the jury that the criminal acts were the result of a common scheme.
These facts support the jury's conclusion that, even if Hall did not pull the trigger, he was a principal to the crime of murder. Section 777.011, Florida Statutes (1977), states that
[w]hoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
An aider and abettor is responsible for all acts committed by his accomplice in furtherance of the criminal scheme. Foxworth v. State, 267 So.2d 647 (Fla. 1972), cert. denied, 411 U.S. 987, 93 S.Ct. 2276, 36 L.Ed.2d 965 (1973); Pope v. State, 84 Fla. 428, 94 So. 865 (1922). The evidence in this case shows that either Hall or Ruffin killed Mrs. Hurst. It also demonstrates that the other was an aider and abettor. There is sufficient evidence to sustain Hall's conviction.
Hall next contends that the trial judge should have granted a mistrial because the prosecutor made inflammatory remarks to the jury and commented on Hall's refusal to testify. It is reversible error for the state to comment on the defendant's failure to testify, Doyle v. Ohio, *1324 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Clark v. State, 363 So.2d 331 (Fla. 1978), but the prosecutor did not do so in the instant case. The state did comment (referring to the defendant), "and he's asleep." This was not a comment on Hall's failure to testify. While this remark may have improperly implied a lack of interest on the part of the defendant in his own trial proceedings, it was not so prejudicial that a mistrial was required. We have reviewed the other remarks complained of and find no reversible error.
Hall also complains that a state witness improperly testified that Hall exercised his right to remain silent after being given his Miranda[2] warning.[3] We interpret that witness's testimony differently and find that he made no improper comment. While a prosecutor may not elicit from a witness the fact that the accused chose not to make a statement, it is not improper to elicit testimony that Miranda warnings were given to the accused. See Holland v. State, 340 So.2d 931 (Fla. 4th DCA 1976). Such testimony is relevant to prove that a subsequent statement was made voluntarily.
Hall's last attack on his conviction is that evidence of the Coburn murder should not have been admitted. He contends that the testimony about Coburn's death was not necessary to the state's case and that the Coburn murder became the feature of the trial. As we did in the case of his cohort, Mack Ruffin, we find that the collateral crime evidence did not become a feature of this trial and that to be admissible the collateral crime evidence need not be necessary to the state's case. See Ruffin v. State, 397 So.2d 277 (Fla. 1980). As in Ruffin, the instant collateral crime evidence was admissible to prove identity (the Hurst murder weapon was found under Coburn's body) and to show the general context in which the criminal action occurred. See Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Hall challenges his death sentence by claiming that the trial court failed to consider that he was under the influence of drugs at the time of the murder, that the prosecutor made improper remarks during the sentencing argument,[4] and that the evidence against Hall was not conclusive. As to the first point, Hall refers to his own testimony:
A [Hall] I was high when this taken place, I wasn't drunk, I was high, and I'm sorry to say I really didn't want no one to get killed in this case, but it happened this way. I'm sorry it happened that way.
* * * * * *

*1325 A That's right. All right, also, if I had been ... I was high, like I said, they had it in the paper, we had been smoking some dope and drunk some beer and bought a pint of brandy.
Q So you had been smoking dope?
A Right, that night.
Q What kind of dope were you smoking?
A Some kind of pot, grass.
Q And some pills, what kind of pills were you taking?
A I got some the pills from Ruffin.
Hall says that this testimony shows mitigating factors of diminished capacity to appreciate the criminality of his conduct and influence of extreme emotional disturbance. See § 921.141(6)(b) and (f), Fla. Stat. (1977). Hall, however, never argued those mitigating factors to the trial court. Even if he had, the trial court could have reasonably found that this testimony did not establish those mitigating factors.
The trial court properly found three aggravating factors beyond a reasonable doubt: the defendant previously had been convicted of another capital crime or of a felony involving the threat of violence to some person; the murder was committed during the commission of kidnapping and robbery; and the murder was especially heinous, atrocious, or cruel. These findings, coupled with the lack of mitigating circumstances, warranted the trial judge's imposition of the death penalty.
We affirm Hall's conviction and death sentence.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Ruffin, tried separately for the Hurst murder, was convicted and received a death sentence. This Court affirmed. Ruffin v. State, 397 So.2d 277 (Fla. 1980). Tried together, Hall and Ruffin were convicted of murdering Deputy Coburn. Ruffin received a sentence of life imprisonment while Hall received another death sentence. Hall v. State, 403 So.2d 1319 (Fla. 1980). Of course, our review of the present case is limited to the record presented in the instant case.
[2] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The state's witness, Detective White, testified as follows:

Q What did you do then?
A Okay, Trooper Peters handed me his handcuffs and while [Hall] was on the ground I approached him from the rear and cuffed his hands behind his back. And at that time I bent him over, he was still on his knees with his feet on the ground, and I bent him over at the waist, and stood over him and advised him of his rights.
Q When you advised him of his rights, will you tell the ladies and gentlemen of the jury, please, what you told him at that time?
A I told him that he had the right to remain silent, that anything he said could and would be used against him in a court of law. I told him he had the right to an attorney if he wished one, and that if he could not afford one, the court would appoint one for him.
Q All right. Did he do anything to indicate whether or not he understood what you were saying to him?
A He said he did, or he indicated that he did.
Q In what way did he indicate he understood?
A I don't recall; he said, "Yeah," or something like that.
Q All right. Will you describe, please, the lighting and weather conditions at the time?
A It was fairly chilly. It was pretty cold. It was clear, it wasn't raining. The only light that I recall having at the time was the light from the Lykes-Pasco Packing Company.
Q How was the person dressed?
A He had on a pair of dark checked slacks, and no shirt and no shoes.
[4] None of the prosecutor's remarks were objected to at the time.