742 So.2d 225 (1999)
Freddie Lee HALL, Appellant,
v.
STATE of Florida, Appellee.
No. 92,008.
Supreme Court of Florida.
July 1, 1999.
Jack W. Crooks, Assistant Capital Collateral Regional Counsel, Tracy L. Martinell, Dayle M. Green, and Jeff Shama, Staff Attorneys, Capital Collateral Regional Counsel, Middle Region, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
Freddie Lee Hall, a prisoner under sentence of death, appeals the trial court's order denying his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the trial court's order for the reasons expressed herein.
Hall and an accomplice, Mack Ruffin, were convicted in separate trials of the February 1978 abduction and murder of a young woman. The facts of this crime are set forth in detail in our opinion on direct appeal. See Hall v. State, 403 So.2d 1321, 1323 (Fla.1981). Both Hall and Ruffin were sentenced to die in the electric chair. This Court affirmed Hall's conviction and sentence. Hall, 403 So.2d at 1325. In September 1982, Hall's first death warrant was signed. Hall filed a rule 3.850 motion, and this Court affirmed the circuit court's denial of that motion and denied Hall's petition for a writ of habeas corpus. Hall v. State, 420 So.2d 872, 874 (Fla.1982). A *226 federal district court granted a temporary stay of execution but eventually denied relief. Hall v. Wainwright, 565 F.Supp. 1222, 1244 (M.D.Fla.1983). The Eleventh Circuit affirmed in part and reversed in part the district court's decision and remanded the case for an evidentiary hearing. Hall v. Wainwright, 733 F.2d 766, 778 (11th Cir.1984). The district court again denied relief, and the Eleventh Circuit affirmed. Hall v. Wainwright, 805 F.2d 945, 948 (11th Cir.1986). Hall then petitioned this Court for a writ of habeas corpus based on a claim that his sentencing proceeding violated Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). This Court held that any error in the sentencing proceeding was harmless. Hall v. Dugger, 531 So.2d 76, 78 (Fla.1988). Hall's second death warrant set execution for September 20, 1988. Hall filed his second rule 3.850 motion, which the circuit court denied. On appeal, this Court considered additional non-record facts and ordered that Hall be resentenced because of a Hitchcock error in sentencing. Hall v. State, 541 So.2d 1125, 1128 (Fla.1989). On resentencing, the jury recommended a death sentence, and the judge imposed it, finding seven aggravators and "unquantifiable" nonstatutory mitigation. State v. Hall, No. 78-52-CF (Fla. 5th Cir.Ct., Feb. 21, 1991) (Findings of Fact for Sentencing Order). This Court affirmed. Hall v. State, 614 So.2d 473 (Fla.1993).
Hall filed the present rule 3.850 motion to seek relief from this resentencing judgment, and it is the denial of that motion which is the subject of this appeal. The circuit court summarily denied all but one of Hall's thirty-three claims. The circuit court held an evidentiary hearing on August 25, 1997, as to Hall's claim that he was incompetent to proceed in the resentencing. Following the hearing, the trial court issued a sixty-five page order denying all relief. State v. Hall, No. 78-52-CF (Fla. 5th Cir.Ct., Oct. 31, 1997) (Final Order). Hall raises five claims in this appeal.[1]
We find that Hall's first, third, and fifth claims are procedurally barred and that Hall fails to demonstrate any merit to his fourth claim. These four claims warrant only limited discussion. In his first claim, Hall argues that the Florida capital sentencing statute is unconstitutional facially and as applied in allowing the death penalty for an incompetent or mentally retarded person. This claim is procedurally barred because it was not raised on direct appeal. See Remeta v. Dugger, 622 So.2d 452, 455-56 (Fla.1993). Issues that could have been raised on direct appeal but were not are noncognizable claims through collateral attack. See Teffeteller v. State, 24 Fla. L. Weekly S110, 734 So.2d 1009 (Fla.1999); Johnson v. State, 593 So.2d 206 (Fla.1992); Smith v. State, 445 So.2d 323 (Fla.1983). Likewise, Hall's third claim, that execution by electrocution is cruel or unusual punishment or both under the Florida and United States Constitutions, is procedurally barred because it was not raised on direct appeal. Teffeteller; Remeta.
In his fifth claim, Hall contends that an error occurred in the trial court's finding that aggravators outweighed mitigators in the resentencing. The trial court correctly found this claim to be procedurally barred in that it was raised and addressed by this Court on direct appeal. See Final Order at 58. This Court held as follows in Hall's second direct appeal:

*227 Hall also attacks the trial judge's findings in regards to the mitigating evidence. We disagree that the judge committed reversible error or that death is disproportionate for this killing. The judge considered four statutory mitigators and more than twenty items of nonstatutory mitigating evidence grouped into three general areas, i.e., mental, emotional, and learning disabilities; abused and deprived childhood; and disparate treatment of co-perpetrator. Although the judge initially stated that some of the mitigating evidence was "unquantifiable," he later spent almost six pages analyzing the mitigating evidence and concluded that whatever mitigators had been established did not outweigh the aggravators.
In considering allegedly mitigating evidence the court must decide if "the facts alleged in mitigation are supported by the evidence," if those established facts are "capable of mitigating the defendant's punishment, i.e., ... may be considered as extenuating or reducing the degree of moral culpability for the crime committed," and if "they are of sufficient weight to counterbalance the aggravating factors." Rogers v. State, 511 So.2d 526, 534 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Campbell v. State, 571 So.2d 415 (Fla.1990). "The decision as to whether a mitigating circumstance has been established is within the trial court's discretion." Preston [v. State], 607 So.2d [404] at 412 [(Fla.1992)]. The judge carefully and conscientiously applied the Rogers standard and resolved the conflicts in the evidence, as was his responsibility. The record supports his conclusion that the mitigators either had not been established or were entitled to little weight.
Hall, 614 So.2d at 478-79 (citations omitted).
In his fourth claim, Hall contends that the circuit court's summary denial of all but one issue raised in Hall's 3.850 motion violated his rights to substantive and procedural due process. After reviewing all of the claims raised, the circuit judge stated in a sixty-five page postconviction order his rationale, based on the record, for denying relief on each claim, including the ineffective assistance of counsel claims. See Final Order. Hall provides no substantive basis for support of his claim that the circuit court's detailed order in respect to these claims was erroneous. We appreciate the circuit court's fully delineating its ruling on each issue. We reject Hall's fourth claim in this appeal as being plainly insufficient.
This brings us to Hall's remaining claim, in which he contends that the postconviction circuit court erred in finding him competent to proceed at resentencing. Hall argues that his resentencing was unconstitutional in that the effects of his mental retardation rendered him incompetent to be resentenced. Hall further contends that the court erred because it had an incomplete understanding of how mental retardation affects competency.
At the evidentiary hearing below, Hall presented the testimony of two of Hall's three resentencing counsel and four mental health experts. Hall also introduced into evidence copies of his medical records from the Department of Corrections between 1978 and 1996. Counsel Patricia Jenkins testified at the hearing that Hall was rational during resentencing but did not participate in planning trial strategy. Counsel Michael Johnson, who is now a circuit judge, testified that he consulted mental health experts for evaluations of Hall as to competency prior to the resentencing and that he would have asked for a competency hearing if he believed that any expert would support an incompetency finding.
Dr. Harry Krop, a psychologist, testified that he evaluated Hall twice as a confidential expert at the request of defense counsel in March and September 1990, prior to resentencing, and found him to have an IQ of 73 and probable brain damage. Dr. *228 Krop opined that neither finding necessarily reflected upon the issue of Hall's competency. He further testified that Hall was taking antidepressant medication at the time of resentencing and had a schizophrenic personality disorder but that Hall nevertheless understood the situation and was competent to proceed to resentencing. Dr. Jethro Toomer, a psychologist, testified that he had evaluated Hall in August 1988 as to potential mental health mitigation, but not as to competency, and found Hall's IQ to be sixty and his mental age to be thirteen. Dr. Toomer testified that he would find it unlikely that someone who is mentally retarded would meet the criteria for competency but that he was never asked to evaluate Hall as to competency at the time of resentencing and that he could not render such an opinion at the evidentiary hearing. Dr. Alfred Fireman, a psychiatrist, testified as to potential effects of prescription drugs but stated that he had never met or evaluated Hall and could not offer an opinion as to his competency. Dr. Mark Zimmerman, a psychologist, testified that he had evaluated Hall in 1995, at the request of defense counsel, and found that Hall's IQ was 74 and that he was mentally retarded and brain damaged but that Dr. Zimmerman was not asked to express an opinion as to competency. Dr. Zimmerman stated at the hearing that he believed Hall was incompetent at the time of his interview in 1995 but that he could not determine whether Hall was competent at resentencing in 1990.
The State introduced into evidence copies of Hall's inmate medical records from the Marion County Jail. The State also called as a witness Hall's additional resentencing defense counsel, Michael Graves, who testified that all of Hall's defense counsel had concerns during the resentencing as to Hall's competency but that Hall seemed to understand the proceedings and was able to converse as to defense strategy.
In its final order following the evidentiary hearing, the circuit court found in relevant part:
The evidence adduced during the evidentiary hearing on August 25, 1997, generally established that Defendant Hall possesses a variety of mental health deficits that have been diagnosed, and treated, by a plethora of mental health professionals since 1978. The testimony of Defendant Hall's resentencing counsel established that each member of his defense team was completely aware of Defendant Hall's mental condition and his mental history. Defendant Hall's competence was a matter that each member of his resentencing defense team actively monitored as a result of their own interactions with Defendant Hall and with the experts who had evaluated him prior to the resentencing hearing. The subject of Defendant Hall's competence to proceed to the resentencing hearing was regularly discussed amongst the defense team themselves and was regularly discussed with the experts who had been appointed by this Court.
This Court was the same Court that presided over Defendant in the resentencing hearing in 1990. This Court had the opportunity then, and at numerous hearings since, [to] observe and listen to the comments of the Defendant, and observe the interactions and interplay between counsel for the Defendant and the Defendant. The Court gives great weight to its opportunity to personally observe the Defendant in these proceedings, and to have the opportunity for the Defendant to speak to the Court in these various proceedings.
The Defendant was represented at the resentencing hearing by not one, not two, but three very competent, experienced, criminal defense attorneys. All three attorneys were extremely knowledgeable in criminal defense work at the time of resentencing, and were among the most experienced and able attorneys in this portion of central Florida at that *229 time. All had considerable experience with death cases. All three continue to prosper in their legal careers, one having become a Circuit Court Judge, one having gone into private practice in criminal defense work, and the other being the most experienced attorney on the Public Defender's staff in the Fifth Judicial Circuit.
The Court has carefully considered all of the testimony received at the evidentiary hearing. While there is no doubt that the Defendant has serious mental difficulties, is probably somewhat retarded, and certainly has learning difficulties and a speech impediment, the Court finds that the Defendant was competent at the resentencing hearings. The Court acknowledges that on this issue that reasonable minds may differ. In fact, there is a dispute in the evidence. Nevertheless, considering all of the evidence presented, including the Court's own knowledge of what occurred at the resentencing hearing, including the Court's own knowledge of what was presented at the resentencing hearing by way of evidence, knowing the Defendant's involvement in the actual carrying out of the crime, and being otherwise advised in the premises, the Court believes that its ruling that the Defendant was competent at the time of resentencing is correct, at least by the greater weight of the evidence. The most substantial, competent evidence brought to bear on the issue supports this conclusion.
Furthermore, the experienced defense counsel for Mr. Hall at resentencing were very aware of his health issues and concerns. The defense availed themselves of numerous experts to evaluate the Defendant's mental status. Defense counsel were well aware of their ethical and legal obligations in regard to the issues concerning Mr. Hall's competence in regard to the resentencing hearing. Defense counsel were in continuous contact with Mr. Hall, as they had arranged for Mr. Hall to be incarcerated locally during the proceeding. This Court has no doubt that should these experienced, competent counsel have any qualms as to whether or not Mr. Hall was legally competent to proceed at resentencing, that they would have brought this issue to the Court's attention in the appropriate manner. Accordingly, this Court finds absolutely no credibility to the claims of the Defendant that defense counsel were ineffective in any significant way in their alleged failure to bring the issues of the Defendant's alleged competency or not to the Court's attention at resentencing.
The testimony of the mental health experts offered during the evidentiary hearing wholly failed to establish that Defendant Hall was incompetent to proceed to the resentencing hearing in 1990. One of the experts opined that he believed that Defendant Hall was legally incompetent at the time of his evaluation in 1995, but could not render an opinion as to Defendant Hall's competence in 1990. The only expert who testified during the evidentiary hearing who did have an opinion regarding Hall's competence relevant to the resentencing hearing, Dr. Harry Krop, indicated that Hall was legally competent. Nothing has been demonstrated by the Defendant that undermines this Court's confidence in the outcome of the resentencing proceeding. The Court believes the Defendant received a very fair resentencing hearing.
In sum, Defendant Hall has failed to establish, by any legal standard even arguably applicable to a post-conviction motion, that he was incompetent to proceed at the resentencing hearing. To the extent Defendant Hall alleges ineffective assistance of counsel as an element of the instant sub-claim, he has similarly failed to establish that the sub-claim has legal or factual merit.
Final Order at 18-20.
Hall argues that the circuit court failed to properly consider Hall's mental retardation *230 and erred in failing to set forth specific findings as to Hall's competency under the factors provided in Florida Rule of Criminal Procedure 3.211(a)(2). These arguments have no merit. As noted above, the court considered all of the evidence presented by Hall and the State as to Hall's mental retardation. In its postconviction order, as we have previously noted, the court specifically found that Hall "is probably somewhat retarded."
The record reflects that, prior to his original trial in 1978, Hall was found competent to stand trial. As detailed in the final postconviction order below, the circuit judge found no reason during the resentencing to believe that Hall did not remain competent in 1990 to proceed to the resentencing. Furthermore, defense counsel did not request a competency hearing. Thus, the judge had no obligation under Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), or Florida Rule of Criminal Procedure 3.210(b)[2] to order a competency hearing and make a judicial competency determination prior to the resentencing or the postconviction proceeding.
Accordingly, we conclude that the circuit judge held a full and fair evidentiary hearing as to Hall's competency claims in which he heard testimony from all relevant defense counsel and from four mental-health experts. All discussed Hall's mental retardation and expressed an understanding of the standard for finding a defendant competent, which requires that he or she be able to understand the nature of the proceedings and to confer with counsel. See Fla. R.Crim. P. 3.211(a) (codifying Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). Although the witnesses expressed concerns as to Hall's mental condition, none of the three defense counsel testified in the evidentiary hearing that he or she believed Hall was incompetent to be resentenced. One of the mental health experts, Dr. Krop, opined that Hall was competent to stand resentencing. None of the other three mental health experts expressed any conclusion as to Hall's competency for resentencing.
The circuit judge stated in his order that he relied upon all of the foregoing testimony and documentary evidence as well as his own observations of Hall in presiding over the resentencing to arrive at his determination that Hall was competent to be resentenced. The record reflects that competent, substantial evidence supports the circuit court's conclusion that Hall was competent at the time of his resentencing. It is the duty of the trial court to determine what weight should be given to conflicting testimony. Mason v. State, 597 So.2d 776, 780 (Fla.1992). Based upon the circuit court's factual findings and the relevant case law, we affirm the circuit court's ruling on this claim.
Accordingly, we affirm the circuit court's order denying Hall's rule 3.850 motion.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which PARIENTE, J., concurs.
QUINCE, J., recused.
ANSTEAD, J., specially concurring.
Although it appears that the majority opinion is technically correct in its assessment of the procedural bars invoked against Hall's present claims, I write separately to express my agreement with Chief Justice Barkett's dissenting opinion in our *231 earlier review of Hall's case explaining why the execution of the mentally retarded violates the Florida Constitution's bar against cruel or unusual punishment. See Hall v. State, 614 So.2d 473 (Fla.1993) (Barkett, C.J., dissenting).
Justice Barkett first succinctly outlined the evidence concerning Hall's retardation:
The testimony reflects that Hall has an IQ of 60; he suffers from organic brain damage, chronic psychosis, a speech impediment, and a learning disability; he is functionally illiterate; and he has a short-term memory equivalent to that of a first grader. The defense's four expert witnesses who testified regarding Hall's mental condition stated that his handicaps would have affected him at the time of the crime. As the trial judge noted in the resentencing order, Freddie Lee Hall was "raised under the most horrible family circumstances imaginable."
Indeed, the trial judge found that Hall had established substantial mitigation. The judge wrote that the evidence conclusively demonstrated that Hall "may have been suffering from mental and emotional disturbances and may have been, to some extent, unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Additionally, the judge found that Hall suffers from organic brain damage, has been mentally retarded all of his life, suffers from mental illness, suffered tremendous emotional deprivation and disturbances throughout his life, suffered tremendous physical abuse and torture as a child, and has learning disabilities and a distinct speech impediment that adversely affected his development.
Hall's mental deficiency as an adult is not surprising. The sixteenth of seventeen children, Hall was tortured by his mother and abused by neighbors. Various relatives testified that Hall's mother tied him in a "croaker" sack, swung it over a fire, and beat him; buried him in the sand up to his neck to "strengthen his legs"; tied his hands to a rope that was attached to a ceiling beam and beat him while he was naked; locked him in a smokehouse for long intervals; and held a gun on Hall and his siblings while she poked them with sticks. Hall's mother withheld food from her children because she believed a famine was imminent, and she allowed neighbors to punish Hall by forcing him to stay underneath a bed for an entire day.
Hall's school records reflect his mental deficiencies. His teachers in the fourth, sixth, seventh, and eighth grades described him as mentally retarded. His fifth grade teacher stated that he was mentally maladjusted, and still another teacher wrote that "his mental maturity is far below his chronological age."
614 So.2d at 479-80. With that factual background in place, Justice Barkett then explained her agreement with the holdings of the Georgia Supreme Court[3] and other jurisdictions barring the execution of the mentally retarded:[4]

*232 This Court has not addressed whether executing the mentally retarded is cruel or unusual punishment under article I, section 17 of the Florida Constitution. I believe it is appropriate to analyze whether imposition of capital punishment in such circumstances is either "cruel" or "unusual." First, because a mentally retarded person such as Freddie Lee Hall has a lessened ability to determine right from wrong and to appreciate the consequences of his behavior, imposition of the death penalty is excessive in relation to the crime committed. Coker v. Georgia, 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). As Justice Brennan noted in Furman v. Georgia, 408 U.S. 238, 257, 92 S.Ct. 2726, 2736, 33 L.Ed.2d 346 (1972) (Brennan, J., concurring), a punishment is excessive when it is unnecessary. An excessive punishment "makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering." Coker, 433 U.S. at 592, 97 S.Ct. at 2866 (discussing Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). I believe imposing the death penalty on mentally retarded defendants is excessive, serves no purpose except to dispose of those some might deem to be "unacceptable members" of society, and therefore, is "cruel."
Second, executing a mentally retarded defendant such as Hall is "unusual" because it is disproportionate. Because mentally retarded individuals are not as culpable as other criminal defendants, I would find that the death penalty is always disproportionate when the defendant is proven to be retarded. However, even without a per se rule, Hall's mental retardation and his horrible childhood represent substantial mitigation, which makes the death penalty disproportionate despite the existence of several aggravating factors. See, e.g., Nibert v. State, 574 So.2d 1059, 1063 (Fla.1990); Smalley v. State, 546 So.2d 720 (Fla.1989); Blakely v. State, 561 So.2d 560 (Fla.1990). This case is illustrative of far too many cases we see at this Court; horrible crimes are repeatedly committed by those who endure sickening abuse and deprivation as children. Many, like Freddie Lee Hall, are also mentally retarded and suffer particularly severe abuse because their parents do not understand the nature of retardation. The connection between an individual's childhood and his or her later ability to function as a productive member of society is obvious to those of us who routinely review criminal cases, and while a tragic childhood and mental *233 retardation do not "excuse" later criminal behavior, they do reflect on an individual's culpability.
Hall, 614 So.2d at 481.
Finally, Justice Barkett acknowledged that the crime involved herein was undoubtedly amongst those for which the death penalty was ordinarily reserved:
The law requires that the death penalty be reserved for the most heinous of crimes and the most culpable of murderers. See, e.g., Songer v. State, 544 So.2d 1010, 1011 (Fla.1989); State v. Dixon, 283 So.2d 1, 8 (1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The crime committed in this case undoubtedly was heinous. A young woman, seven months pregnant, was raped, beaten, and shot to death. The horrible nature of this crime is uncontroverted, and it is certainly among the types of offenses for which the death penalty may be imposed. However, Freddie Lee Hall is not among the most culpable of murderers. Hall's judgment, thought processes, and actions are unquestionably affected by his mental retardation. He cannot understand right from wrong in the way that most members of our society do, and while he should spend the rest of his life in prison, he should not be executed.
Hall, 614 So.2d at 481-82. I fully concur in Justice Barkett's observations and analysis, including her evaluation of the heinous nature of the crime involved. Further, it is important to note that Hall did not actually kill the victim. Rather, his codefendant, Ruffin, was the actual killer. See id. at 478. It should also not go unnoticed that the actual killer, Ruffin, received a life sentence while Hall was sentenced to death. See id. at 479.
PARIENTE, J., concurs.
NOTES
[1] Hall claims that: (1) the Florida capital sentencing statute is unconstitutional facially and as applied in allowing the death penalty for an incompetent or mentally retarded person; (2) Hall's resentencing was unconstitutional in that he is a mentally retarded person who was not competent to be resentenced; (3) execution by electrocution is cruel or unusual punishment or both under the Florida and United States Constitutions; (4) the trial court's summary denial of all but one issue raised in Hall's 3.850 motion violated Hall's rights to substantive and procedural due process; (5) fundamental error occurred in the trial court's finding that aggravators outweighed mitigators in the resentencing.
[2] Florida Rule of Criminal Procedure 3.210(b) provides in relevant part:

If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition....
[3] The Georgia Supreme Court in Fleming v. Zant, 259 Ga. 687, 386 S.E.2d 339 (1989), explained:

The "standard of decency" that is relevant to the interpretation of the prohibition against cruel and unusual punishment found in the Georgia Constitution is the standard of the people of Georgia, not the national standard. Federal constitutional standards represent the minimum, not the maximum, protection that this state must afford its citizens. Thus, although the rest of the nation might not agree, under the Georgia Constitution, the execution of the mentally retarded constitutes cruel and unusual punishment.
386 S.E.2d at 342 (citation omitted).
[4] Justice Barkett also noted the evolution of attitudes toward mental retardation:

Floridians' attitudes toward the mentally retarded have evolved significantly in recent decades. Those mentally retarded people committed to state care no longer are warehoused in "training centers," and a variety of procedural safeguards have been enacted to protect the rights of those committed to state facilities. See § 393.11, Fla.Stat. (1991) (regulating involuntary admission of the mentally retarded to state residential services); see also David A. Davis, Executing the Mentally Retarded, Fla. Bar.J., February 1991, at 13, 15 (discussing generally how statutes have changed to reflect a more enlightened approach to caring for the mentally retarded).
Society has developed a greater understanding of mental retardation. It is generally recognized now that mental retardation is a permanent learning disability that manifests itself in several predictable ways, including poor communication skills, short memory, short attention span, and immature or incomplete concepts of blameworthiness and causation. Davis, Fla.Bar J. at 13; see also James W. Ellis & Ruth A. Luckasson, Mentally Retarded Criminal Defendants, 53 Geo.Wash.L.Rev. 414, 417 (1985); John Blume & David Bruck, Sentencing the Mentally Retarded to Death: An Eighth Amendment Analysis, 41 Ark.L.Rev. 725, 732-34 (1988). A person who is mentally retarded is not just "slower" than the average person. Mental retardation is "a severe and permanent mental impairment that affects almost every aspect of a mentally retarded person's life." Blume & Bruck, 41 Ark.L.Rev. at 734.
It would appear that the trial judge did not understand the nature of mental retardation. Otherwise, he could not have reached the conclusion that the mitigating factors were entitled to little weight because he could not "definitely establish that they affected Hall at the time of the crime."
Hall, 614 So.2d at 480-81.