PER CURIAM.
This case is before the Court on appeal of an order denying a motion to vacate a sentence of death under Florida Rule of Criminal Procedure 3.203. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons expressed herein, we affirm the order denying relief.
FACTS AND PROCEDURAL HISTORY
Freddie Lee Hall was tried and convicted in Putnam County for the 1978 murder *706 of Karol Hurst. Hall v. State (Hall I), 403 So.2d 1321, 1323 (Fla.1981). We upheld Hall’s conviction and sentence on direct appeal. Id. at 1325.
On September 9, 1982, the governor signed Hall’s first death warrant, effective for the week of October 1 through 8, 1982. Hall v. State (Hall II), 420 So.2d 872, 873 (Fla.1982). Hall filed a motion to vacate, a petition for writ of habeas corpus, and an application for a stay of execution, all of which were denied. Id. Hall then sought habeas corpus relief in the federal court, which was denied without an evidentiary hearing. Hall v. Wainwright (Hall III), 733 F.2d 766, 769 (11th Cir.1984), cert. denied, 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985). Hall appealed to the Eleventh Circuit Court of Appeals, which reversed in part and remanded for a hearing. Id. at 777 (finding that Hall was entitled to a hearing on the issues of his absence from the courtroom and whether he deliberately bypassed his ineffective assistance of counsel claim).
On remand, the district court again denied relief, finding that Hall’s absences from trial occurred during non-critical stages and were therefore harmless, and that he deliberately bypassed the ineffective assistance of counsel claim. Hall v. Wainwright (Hall IV), 805 F.2d 945, 946 (11th Cir.1986), cert. denied, Hall v. Dugger, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). The Eleventh Circuit affirmed the denial. Id. at 948. Hall then petitioned this Court for habeas corpus relief based on the United States Supreme Court’s ruling in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (holding that all mitigating factors, not just statutory mitigation, should be considered by the judge and jury). This Court held that any error in the sentencing was harmless. Hall v. Dugger (Hall V), 531 So.2d 76, 77 (Fla.1988).
The governor then signed a second death warrant on September 20, 1988. Hall v. State (Hall VI), 541 So.2d 1125, 1126 (Fla.1989). Hall filed his second 3.850 motion, alleging error under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). The trial court found that this Court’s ruling on the issue in Hall V was a procedural bar to Hall raising the claim again. Hall VI, 541 So.2d at 1126. We disagreed, stating that the “case involves significant additional non-record facts” that had not been considered on habeas review. Id. Ultimately, we determined that a Hitchcock error occurred, and that such error could not be considered harmless. Id. at 1128. We then vacated Hall’s death sentence and remanded for a new sentencing proceeding. Id.
During the resentencing, the trial court found Hall mentally retarded as a mitigating factor and gave it “unquantifiable” weight. The court again condemned Hall to death, and we affirmed. Hall v. State (Hall VII), 614 So.2d 473, 479 (Fla.1993). Hall sought postconviction relief, which was denied. Hall v. State (Hall VIII), 742 So.2d 225, 230 (Fla.1999). We affirmed the denial. Id. at 230. In finding that the trial court properly denied Hall’s claim that the court erred in finding him competent to proceed at the resentencing, we stated “While there is no doubt that [Hall] has serious mental difficulties, is probably somewhat retarded, and certainly has learning difficulties and a speech impediment, the Court finds that [Hall] was competent at the resentencing hearings.” Id. at 229.
After Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), was decided, Hall filed a motion to declare *707 section 921.137, Florida Statutes (2004),[1] unconstitutional. While the motion was pending, we adopted Florida Rule of Criminal Procedure 3.208 as a mechanism to file Atkins claims. Hall timely filed such a claim on November 30, 2004. No action was taken on the motion until, on March 27, 2008, Hall filed a motion to prohibit relitigation of the mental retardation issue, which was denied. The court then held an evidentiary hearing on Hall’s successive motion to vacate his sentence.
At the evidentiary hearing held on December 7 and 8, 2009, Hall presented testimony from Dr. Valerie McClain, who testified that she did not obtain Hall’s IQ; Lugene Ellis, Hall’s half-brother, who testified about his recollection of Hall as a child; James Hall, Hall’s brother, who testified regarding Hall’s problems with reading, writing, and caring for himself; Dr. Harry Krop, who testified that Hall’s IQ using the Wechsler Adult Intelligence Scale Revises was 73 and that a prior result on the same test given by Marilyn Feldman resulted in a score of 80; and Dr. Gregory Prichard, who testified that Hall scored a 71 on the Wechsler Adult Intelligence Scale Third Edition (WAIS-III). Hall sought to introduce a report compiled by then-deceased Dr. Bill Mosman through Dr. Prichard, but the court denied it and only allowed Hall to proffer the report for the record. After reviewing the evidence presented, the court determined that Hall could not meet the first prong of the mental retardation standard to establish his mental retardation — an IQ below 70. The court denied relief in an order issued May 26, 2010, and entered an amended order on June 16, 2010.
Hall appeals the court’s denial, raising four claims: (1) the trial court’s finding that Hall is not mentally retarded is not supported by competent, substantial evidence; (2) the trial court erred in granting the State’s motion in limine that limited the evidence Hall could present on his mental retardation claim; (3) the trial court erred by striking Dr. Mosmaris report; and (4) the trial court should have imposed a life sentence based on the doctrine of collateral estoppel. Because we find that there is competent, substantial evidence to support the court’s finding that Hall is not mentally retarded, we affirm.
DISCUSSION
Hall asserts that he is mentally retarded pursuant to Atkins. Further, Hall alleges that his IQ should be read as a range of scores from 67 to 75 and that this Court’s adoption of a firm cutoff of 70 or below to qualify as mentally retarded misapplies the Supreme Court’s ruling in Atkins and fails to reflect an understanding of IQ testing. Hall contends that the appropriate standard would (a) include the standard error measurement (SEM), and (b) provide for a score band or range of scores. We recently declined to adopt this “range of scores” argument. See Franqui v. State, 59 So.3d 82 (Fla.2011). We again decline to adopt this line of reasoning. As we stated in Franqui:
Nixon asserted, as does Franqui, that the Supreme Court in Atkins noted a consensus in the scientific community that a full scale IQ falling within a range of 70 to 75 meets the first prong of the test for mental retardation; therefore, Nixon contended, states must recognize *708 the higher cut-off IQ score of 75. Nixon, 2 So.3d at 142. We disagreed, reasoning that Atkins recognized a difference of opinion among various sources as to who should be classified as mentally retarded, and consequently left to the states the task of developing appropriate ways to enforce the constitutional restriction on imposition of the death sentence on mentally retarded persons. Nixon, 2 So.3d at 142.
Id. at 94 (citing Nixon v. State, 2 So.3d 137 (Fla.2009)).
Section 921.137, Florida Statutes (2012), prohibits the trial court from sentencing to death a mentally retarded defendant who is convicted of a capital felony. Section 921.137 provides the governing legal standard for such claims, and rule 3.203 outlines the procedural requirements. Both the statute and rule define the elements of a mental retardation claim as discussed in Atkins: (1) significantly subaverage general intellectual functioning, (2) existing concurrently with deficits in adaptive behavior, and (3) manifested during the period from conception to age eighteen. See Atkins, 536 U.S. at 318, 122 S.Ct. 2242; § 921.137(1), Fla. Stat. (2012); Fla. R.Crim. P. 3.203(b). Subsection (1) of the statute defines mental retardation as:
significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. The term “significantly subaverage general intellectual functioning,” for the purpose of this section, means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the Agency for Persons with Disabilities. The term “adaptive behavior,” for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community. The Agency for Persons with Disabilities shall adopt rules to specify the standardized intelligence tests as provided in this subsection.
§ 921.137(1), Fla. Stat. (2012). This statute was adopted prior to the Supreme Court’s ruling in Atkins. See Ch.2001-202, § 1, Laws of Fla.
In Cherry v. State, 959 So.2d 702 (2007), we determined the proper interpretation of section 921.137. Cherry argued that an IQ measurement is more appropriately expressed as a range of scores rather than a concrete number because of the SEM. We held:
Both section 921.137 and rule 3.203 provide that significantly subaverage general intellectual functioning means “performance that is two or more standard deviations from the mean score on a standardized intelligence test.” One standard deviation on the WAIS-III, the IQ test administered in the instant case, is fifteen points, so two standard deviations away from the mean of 100 is an IQ score of 70.... [T]he statute does not use the word approximate, nor does it reference the SEM. Thus, the language of the statute and the corresponding rule are clear. We defer to the plain meaning of statutes....
Cherry, 959 So.2d at 712-13.
In Nixon, the appellant challenged our decision in Cherry, also alleging that we improperly imposed a firm IQ cutoff of 70. We disagreed, reasoning that while Atkins recognized a difference of opinion among various sources regarding who should be classified as mentally retarded, the Supreme Court left the determination to the individual states. Accordingly, we found that Florida’s definition is consistent with the American Psychiatric Association’s di *709 agnostic criteria for mental retardation. Nixon v. Florida, 2 So.3d 137, 143 (Fla.2009) (citing Jones v. State, 966 So.2d 319, 326 (Fla.2007)).
The cutoff was recently reaffirmed in Franqui. Franqui was convicted of the December 1991 murder of Raul Lopez and sentenced to death, which this Court affirmed. Franqui v. State, 59 So.3d 82, 106 (Fla.2011) (citing Franqui v. State, 699 So.2d 1312 (Fla.1997)). Franqui filed his initial rule 3.850 motion in January 1999, which he then amended in April 2000. Id. at 89. Prior to the evidentiary hearing granted on some of the claims he raised, Franqui supplemented his motion to raise an Atkins claim, which was summarily denied on February 21, 2008. Id. at 89-90. On review, we temporarily relinquished jurisdiction to the circuit court with directions to hold an evidentiary hearing on the mental retardation claim. Id. at 90 (citing Franqui v. State, 14 So.3d 238 (Fla.2009)). Testing revealed Franqui’s IQ fell somewhere between 71 and 80. Id. at 91. The trial court, after considering the stipulated evidence of the experts’ reports, found that Franqui was not mentally retarded as a matter of law. Id.
On appeal, Franqui raised essentially the same claim Hall raises here, namely: this Court’s interpretation of mental retardation mandating a cutoff score of 70 or below to meet the first prong of the test for mental retardation is contrary to Atkins. In Franqui, we found that (1) the United States Supreme Court did not mandate a specific IQ score or range for a finding of mental retardation in Atkins; (2) Florida’s statute prohibiting the execution of the mentally retarded, section 921.137, preceded Atkins; (3) proper interpretation of section 921.137 was under the plain language of the statute providing that “significantly subaverage general intellectual functioning” means performance that is “two or more standard deviations from the mean score on a standardized intelligence test” and does not require the Court to consider the standard error of measurement (SEM); and (4) one standard deviation on the test in question is fifteen points, thus 70 is the appropriate score based on the plain language of section 921.137 and not a range of scores.
Hall argues that we recognized a higher IQ as possible evidence of mental retardation in Thompson v. State, 3 So.3d 1237 (Fla.2009), where we reversed the trial court’s summary denial of Thompson’s postconviction motion. Although Thompson’s motion alleged an IQ of 74 or 75,[2] we reversed the trial court’s summary denial and remanded for the court to hold an evidentiary hearing to determine whether Thompson met the requirements established in Cherry. Thompson, 3 So.3d at 1238-39. However, we specified, “[W]e express no opinion on the merits of [Thompson’s] claim of mental retardation.” Thompson, 3 So.3d at 1238.
Hall additionally alleges that this Court recognized an IQ score of 75 as “evidence of mental retardation” in Foster v. State, 929 So.2d 524 (Fla.2006). Hall mischarac-terizes our opinion. We quoted the post-conviction court, which found that “ ‘even if the Defendant’s IQ score of 75 is considered as evidence of mental retardation, [he] does not meet the second prong of the test set forth in Atkins.... ” Id. at 532. As such, neither this Court nor the lower court recognized 75 as evidence of mental retardation.
Like Franqui before him, Hall asserts that the statutorily prescribed cutoff is arbitrary because it does not consider the range of scores mentioned in Atkins. We *710 have previously found this argument to be meritless. See, e.g., Cherry, 959 So.2d at 712-13; Nixon, 2 So.3d at 142; Phillips v. State, 984 So.2d 503, 510 (Fla.2008); Jones v. State, 966 So.2d 319, 329 (Fla.2007); Brown v. State, 959 So.2d 146, 148-49 (Fla.2007); Burns v. State, 944 So.2d 234, 248 (Fla.2006); Rodgers v. State, 948 So.2d 655, 666-68 (Fla.2006); Trotter v. State, 932 So.2d 1045, 1049-50 (Fla.2006); Johnston v. State, 960 So.2d 757, 761 (Fla.2006); Zack v. State, 911 So.2d 1190, 1201 (Fla.2005).
Hall next contends that the lower court improperly limited his introduction of evidence of the second two elements to establish mental retardation. We have recognized that all three elements must be established for a defendant to show that he or she is mentally retarded and thus ineligible for execution.
The defendant must establish that he has significantly subaverage general intellectual functioning. If significantly subaverage general intellectual functioning is established, the defendant must also establish that this significantly sub-average general intellectual functioning exists with deficits in adaptive behavior. Finally, he must establish that the significantly subaverage general intellectual functioning and deficits in adaptive behavior manifested before the age of eighteen.
Thompson, 3 So.3d at 1238 (quoting Cherry, 959 So.2d at 711) (internal brackets omitted). Thus, we have concluded that because a defendant must establish all three elements of such a claim, the failure to establish any one element will end the inquiry. See, e.g., Cherry, 959 So.2d at 714 (“Because we find that [the defendant] does not meet this first prong of the section 921.137(1) criteria, we do not consider the other two prongs of the mental retardation determination.”). Hall’s argument that the lower court improperly limited his introduction of evidence after he failed to establish the requisite IQ is thus without merit. See Jones v. State, 966 So.2d 319, 325 (Fla.2007); Burns v. State, 944 So.2d 234, 249 (Fla.2006); § 921.137(4), Fla. Stat. (2012).
Third, Hall complains that the trial court abused its discretion in refusing to admit the report prepared by Dr. Mosman through the testimony of Dr. Prichard. In its order, the court noted that Dr. Mos-man’s report “lacked critical detail and information indicating how he obtained [Hall’s] intelligence quotient of sixty-nine (69).” The court determined that the report did not constitute competent evidence and that Hall’s failure to comply with the court’s order to compel was highly prejudicial to the State and excluded the report from evidence. Because the underlying data to support the report were not available, the State could not conduct a proper voir dire and Hall could not otherwise establish the adequacy of the underlying data to support Dr. Mosman’s report. Accordingly, we find that the trial court did not abuse its discretion in excluding the report.
Finally, Hall alleges that the lower court should have been precluded from holding an evidentiary hearing on Hall’s alleged mental retardation and should have entered a life sentence because the court previously found him to be mentally retarded. We disagree.
In Bobby v. Bies, 556 U.S. 825, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009), the United States Supreme Court addressed a similar issue. Michael Bies was tried and convicted in Ohio of the aggravated murder, kidnapping, and attempted rape of a ten-year-old boy nearly one decade prior to the Court’s decision in Atkins. Bies, 129 S.Ct. at 2149. Bies’ IQ fell in the 65 to 75 *711 range, indicating that he is “mildly mentally retarded to borderline mentally retarded.” Id. at 2149-50. On postconviction review, the trial court agreed that Bies was mildly mentally retarded, but concluded that he was still eligible for execution. Id. at 2150. After the Supreme Court issued Atkins, and the Ohio Supreme Court adopted it in State v. Lott, 97 Ohio St.3d 303, 779 N.E.2d 1011 (2002), Bies presented his Atkins claim to the state’s postconviction court.[3] Id. Bies moved for summary judgment, arguing that the record established his mental retardation and that the State was precluded and estopped from disputing it. Id. The court denied summary judgment because Bies’ mental retardation had not been established under the Atkins-Lott framework, and ordered a full hearing. Id. at 2151. Bies took his claim to the Federal District Court, arguing that the Fifth Amendment’s Double Jeopardy Clause barred the State from relitigating the issue of his mental condition. The court agreed and ordered vacation of Bies’ death sentence. The Court of Appeals affirmed. Id. The Supreme Court reversed, stating that “[t]he State did not ‘twice put Bies in jeopardy.’” Id. Further, the court stated that no state-court determination of his mental retardation entitled him to a life sentence. Id. at 2152.
Here, Hall argues that the issue should be estopped because of the trial court’s finding that Hall was mentally retarded as mitigation. As summarized by the Supreme Court in Bies,
even if the core requirements for issue preclusion had been met, an exception to the doctrine’s application would be warranted due to this Court’s intervening decision in Atkins. Mental retardation as a mitigator and mental retardation under Atkins ... are discrete legal issues. The Atkins decision itself highlights one difference: “[R]eliance on mental retardation as a mitigating factor can be a two-edged sword that may enhance the likelihood that the aggravating factor of future dangerousness will be found by the jury.” 536 U.S. at 321, 122 S.Ct. 2242. This reality explains why prosecutors, pre-Atkins, had little incentive vigorously to contest evidence of retardation.... Because the change in law substantially altered the State’s incentive to contest Bies’ mental capacity, applying preclusion would not advance the equitable administration of the law.
Bies, 129 S.Ct. at 2153. Accordingly, we deny relief on this claim.
For the foregoing reasons, we affirm the court’s denial of Hall’s 3.203 motion.
It is so ordered.
POLSTON, C.J., LEWIS, and CANADY, JJ., concur.
PARIENTE, J., concurs with an opinion.
LABARGA, J., dissents with an opinion, in which PERRY, J., concurs.
PERRY, J., dissents with an opinion, in which LABARGA, J., concurs.
QUINCE, J., recused.

. Section 921.137, Florida Statutes was enacted during a regular session of the Florida Legislature in 2001. See ch.2001-202, § 1, Laws of Fla. The statute has been amended once to transfer duties from the Developmental Disabilities Program Office within the Department of Children and Family Services to the Agency for Persons with Disabilities. See ch.2006-195, § 23, Laws of Fla.

. Thompson, 3 So.3d at 1239 (Wells, J., dissenting).

. Unlike Florida, Ohio reviews mental retardation where the defendant’s IQ is above 70 as a rebuttable presumption.