960 So.2d 757 (2006)
David Eugene JOHNSTON, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-824.
Supreme Court of Florida.
May 4, 2006.
Rehearing Denied August 22, 2006.
J. Edwin Mills, Orlando, FL, for Appellant.
*758 Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Kenneth S. Nunnelley, Senior Assistant Attorney General, Daytona Beach, FL, for Appellee.
PER CURIAM.
David Eugene Johnston appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm both the trial court's denial of postconviction relief and its finding that Johnston is not mentally retarded.

FACTUAL AND PROCEDURAL BACKGROUND
Johnston was convicted of first-degree murder in the 1984 death of eighty-four-year-old Mary Hammond. Johnston was sentenced to death following a finding of three aggravating factors and no mitigating factors; his conviction and sentence were affirmed on Johnston's direct appeal in 1986. Johnston v. State, 497 So.2d 863, 865 (Fla.1986). The Governor signed a death warrant in 1988, and Johnston filed a motion for postconviction relief. The execution was stayed pending an evidentiary hearing, after which the trial court denied relief in its entirety. In 1991, this Court affirmed the trial court's denial of postconviction relief and denied Johnston's petition for writ of habeas corpus. Johnston v. Dugger, 583 So.2d 657, 659 (Fla. 1991). Later, Johnston filed a petition for writ of habeas corpus in federal district court, which was also denied. On appeal to the Eleventh Circuit Court of Appeals, the court declined to give Johnston habeas relief. Johnston v. Singletary, 162 F.3d 630, 632 (11th Cir.1998). Following this Court's decision in Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999), which clarified varying language used in ineffective assistance of counsel claims, Johnston filed another petition for writ of habeas corpus, arguing that Stephens should apply retroactively to his case. We denied that petition in Johnston v. Moore, 789 So.2d 262, 263 (Fla.2001).
In June 2002, Johnston filed a motion to vacate judgment of conviction and sentences, asserting that he is mentally retarded and that his execution would violate his constitutional rights. In August 2002, Johnston filed another postconviction motion challenging the constitutionality of his death sentence in response to the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which held that the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies in the death penalty context. Without conducting an evidentiary hearing, the trial court denied relief in its entirety in a written order dated January 31, 2003. After this Court relinquished jurisdiction pending appeal, the trial court conducted an evidentiary hearing and again denied relief. Johnston now appeals the trial court's denial of postconviction relief, and raises two claims for this Court's consideration.

ANALYSIS
Johnston raises the following claims in this appeal: (1) whether Florida's capital sentencing scheme is unconstitutional under the United States Supreme Court's decision in Ring, and (2) whether the trial court erred in finding that Johnston is not mentally retarded.[1]

*759 Ring

Johnston's first claim is that Florida's capital sentencing scheme is unconstitutional under the United States Supreme Court's decision in Ring. We have recently held that even if Ring were to be applied in Florida, it would not be applied retroactively in postconviction claims. See Johnson v. State, 904 So.2d 400, 412 (Fla.2005). Hence, we affirm the trial court's denial of Johnston's Ring claim.

Mental Retardation
On June 24, 2005, the trial court held an evidentiary hearing to determine if Johnston meets the mental retardation criteria set out in Florida Rule of Criminal Procedure 3.203.[2] Based upon the evidence received at the hearing, the trial court concluded that Johnston is not retarded. We now review that ruling and affirm the trial court's determination.
Prior to the evidentiary hearing, the trial court appointed Drs. Sal Blandino and Gregory A. Prichard to examine Johnston. Dr. Blandino, a licensed psychologist, examined Johnston at Union Correctional Institution on May 31, 2005. Dr. Blandino testified that mental retardation is a disorder classified in the Diagnostic and Statistical Manual using a three-prong test. The first prong involves "sub-average intellectual functions usually assessed by an IQ test or an assessment of intellectual ability that tends to fall below a score of 70, so 69 and below." The IQ testing is performed by administering a Wechsler Series or Stanford-Binet test. The second prong involves deficits in adaptive functioning, which concerns general functioning behavior in life, and the third prong requires that the deficiencies must be present prior to age eighteen. Dr. Blandino did not conduct the IQ testing himself in this case because of the close proximity in time (two weeks) between Dr. Prichard's testing and Dr. Blandino's examination. He also did not administer a further IQ test because he concluded that Dr. Prichard's results were almost identical to the results that were obtained from testing of Johnston some thirty-one years earlier. On the tests, Johnston's score on the verbal scale was 76, his performance scale was 95, and his full scale IQ was 84. This score falls between the upper range of borderline intellectual functioning and low average intellectual functioning. Borderline intellectual functioning is defined as a score between 70 and 84; low average is between 84 and 99; and average is between 100 and 115.
Dr. Blandino testified that he did not notice severe impairments in Johnston's communication or reading abilities. However, Dr. Blandino noted that when Johnston was administered a Stanford-Binet test at age seven, he scored a 57; furthermore, he also took a Wechsler Intelligence Scale for Children test when he was twelve and scored a 65. However, Dr. Blandino discounted these earlier scores because the test administrators placed a caveat in their notes indicating "that this was not an accurate *760 assessment of his functioning because of behavioral and emotional issues, and that he was actually performing or was functioning at a higher level." This observation was bolstered by a test administered two years after the last test, on which he scored significantly better, and thirty-one years later, by the most recent test, which was identical to the previous one. Finally, Dr. Blandino concluded that Johnston is not mentally retarded. He also noted that Johnston told him he was mentally retarded, which is not typical of a person who is truly mentally retarded, and stated that he thought Johnston knew that being found mentally retarded would help his "legal predicament." He testified that he did not assess Johnston's adaptive functioning because
I thought it was a moot point given the fact that he didn't meet two of the three criteria for the diagnosis of mental retardation, and again, the IQ score being as high as it was and the fact that . . . mental retardation did not appear to be present prior to age 18, and again by the current score it wasn't there . . ., so I figured why waste the time and money.
Concerning the 95% confidence interval typically involved in IQ testing, Dr. Blandino testified that a score of 84 falls decisively in the 80-88 range, solidly in the borderline to low average intellectual functioning range.
Dr. Prichard, a licensed clinical psychologist, testified concerning the three prongs that determine mental retardation as well. He stated that the three prongs are not independent elements; rather, they must all be present in order for mental retardation to be present. Dr. Prichard testified that the "acceptable, standard manner of proceeding in an assessment within the profession of psychology" is to stop at the first prong if the IQ score assessed there is too high to constitute mental retardation. Johnston had extensive mental health records, and there was "incredible agreement" between the different forms of formal testing that had been performed on Johnston throughout his life. Three tests over the course of thirty years, one at age thirteen, one performed in 1988, and the one Dr. Prichard performed, resulted in practically the same score, indicating to Dr. Prichard that Johnston is functioning in the 80s intellectually. Dr. Prichard agreed with Dr. Blandino's belief that Johnston's two early low IQ test scores should be discarded because, at the time, "emotional factors were getting in the way of optimal functioning."[3] Dr. Prichard stated that, although Johnston exhibited some adaptive deficits, he did not perform testing concerning this because of his determination that Johnston's IQ score was too high. Dr. Prichard concluded that even with the standard error of measurement, Johnston's IQ level is not near the level of mental retardation.
On July 7, 2005, the trial court entered an order finding that Johnston is not mentally retarded because of the evidence from both experts who "testified that [Johnston] consistently scored too high on IQ tests to support a finding of `significantly subaverage general intellectual functioning.'"
After the United States Supreme Court's decision in Atkins, in which the Court held that the execution of the mentally retarded constitutes excessive punishment *761 under the Eighth Amendment and that states are free to establish their own methods for determining which offenders are mentally retarded, this Court adopted rule 3.203, which provides that a trial court shall conduct an evidentiary hearing for a determination of mental retardation. Fla. R.Crim. P. 3.203(e); see also Amendments to Fla. Rules of Criminal Procedure & Fla. Rules of Appellate Procedure, 875 So.2d 563, 571 (Fla. 2004). The definition of mental retardation is provided in rule 3.203(b):
"[M]ental retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. . . . "[S]ignificantly subaverage general intellectual functioning" . . . means performance that is two or more standard deviations from the mean score on a standardized intelligence test. . . . "[A]daptive behavior" . . . means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.
Under this rule, the three prongs of mental retardation consist of: (1) subaverage general intellectual functioning, (2) deficits in adaptive behavior, and (3) manifestation before age 18; these three prongs are to be considered in the conjunctive.
The standard of review utilized by this Court in reviewing a trial court's finding on a defendant's mental retardation claim is whether competent, substantial evidence supports the finding.
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the [trial court's decision].
Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981) (footnote omitted), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); see also Windom v. State, 886 So.2d 915, 927 (Fla. 2004) (citing Porter v. State, 788 So.2d 917, 923 (Fla. 2001)) ("This Court has held that it will not substitute its judgment for that of the trial court on questions of fact, and likewise on the credibility of witnesses and the weight given to the evidence so long as the trial court's findings are supported by competent, substantial evidence.").
Johnston argues that the trial court erred in finding him not mentally retarded because the experts appointed by the trial court only considered the first prong of rule 3.203. We find no error and conclude that the trial court's findings are supported by competent, substantial evidence. First, Johnston had to score two standard deviations below the mean score on an IQ test, or 70, in order to satisfy the first prong of rule 3.203(b). While Johnston did score below this number in tests he took early in his life, the test administrators noted that the low scores were probably due to behavioral and emotional problems at the time. These observations were apparently proved true later when tests performed on Johnston from the age of thirteen on were consistently in the upper borderline intellectual to low average functioning range, well above the determinative line for retardation. Both experts' testimony during the evidentiary hearing supported such a conclusion.
While Johnston is correct that the experts in his case did not perform adaptive functioning tests under the second prong of rule 3.203, both experts testified that *762 this testing was unnecessary and contrary to standard professional practice because all three prongs of the rule must be met in order for a defendant to be found mentally retarded. Finally, both experts concluded that Johnston is not mentally retarded pursuant to rule 3.203. Therefore, there was competent, substantial evidence to support the trial court's finding that Johnston is not mentally retarded.

CONCLUSION
Accordingly, for the reasons discussed above, we affirm the trial court's denial of Johnston's motion for postconviction relief with respect to his Ring claim, and we affirm the trial court's determination that Johnston is not mentally retarded.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] This Court has adopted Florida Rule of Criminal Procedure 3.203, which provides procedures for a determination of mental retardation in response to the United States Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that states could not execute the mentally retarded. Id. at 321, 122 S.Ct. 2242.
[2] In June 2002, Johnston filed a Motion to Vacate Judgment of Conviction and Sentences in the trial court because he is mentally retarded and his execution would violate his constitutional rights under the Eighth Amendment. Without conducting an evidentiary hearing, the trial court denied relief in a written order dated January 31, 2003. Johnston appealed the trial court's denial of relief to this Court, and this Court relinquished jurisdiction in its Clarified Order Relinquishing Jurisdiction for Determination of Mental Retardation dated December 17, 2004. After an evidentiary hearing, the trial court found that Johnston is not mentally retarded. Johnston now challenges the trial court's findings.
[3] Dr. Prichard stated that adaptive functioning is one of the three prongs of mental retardation because, even if a person scores in the mentally retarded range on the IQ test, his adaptive functioning may be so high as to deem him not mentally retarded. The reverse is not true, however. No matter how poor a person's adaptive functioning is, a person cannot be mentally retarded if he scores in the non-mentally retarded range.