PER CURIAM.
 

 Joe Elton Nixon appeals the denial of his motion for postconviction relief filed pursuant to Florida Rules of Criminal Procedure 3.851 and 3.203. Because the order concerns postconviction relief from a sentence of death, we have jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons expressed below, we affirm both the trial court’s denial of postconviction relief and its finding that Nixon is not mentally retarded.
 

 I. FACTS AND PROCEDURAL HISTORY
 

 Joe Elton Nixon was charged, convicted, and sentenced to death for the 1984 murder of a Tallahassee woman. On direct appeal, we affirmed the conviction and sentence.
 
 See Nixon v. State,
 
 572 So.2d 1336 (Fla.1990)
 
 (Nixon I
 
 )
 
 [1]
 
 The United States
 
 *139
 
 Supreme Court denied Nixon’s petition for a writ of certiorari.
 
 See Nixon v. Florida,
 
 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991). Subsequently, Nixon filed with the trial court a motion pursuant to Florida Rule of Criminal Procedure 3.850. The trial court denied the motion without an evidentiary hearing. Nixon appealed the trial court’s summary denial to this Court.
 
 See Nixon v. Singletary,
 
 758 So.2d 618 (Fla.2000)
 
 (.Nixon II
 
 ).
 
 [2]
 
 Additionally, Nixon filed with this Court a petition for a writ of habeas corpus.
 
 See id.
 

 [3]
 

 In
 
 Nixon II,
 
 the dispositive issue was whether Nixon was denied effective assistance of counsel when his lawyer conceded guilt without his consent.
 
 See
 
 758 So.2d at 624. Ultimately, we held that if Nixon could establish that he did not consent to counsel’s strategy, then the Court would find counsel to be per se ineffective under the standard espoused in
 
 United States v. Cronic,
 
 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).
 
 See Nixon II,
 
 758 So.2d at 624. Accordingly, we remanded the case to the trial court to hold an evidentiary hearing on the issue of whether Nixon consented to trial counsel’s strategy.
 
 See id.
 
 On remand, an evidentiary hearing was held. After the hearing, the trial court denied relief and found that Nixon consented to counsel’s strategy.
 
 See Nixon v. State,
 
 857 So.2d 172 (Fla.2003)
 
 {Nixon III).
 
 On appeal, we found Nixon had not consented to counsel’s strategy. We then applied the per se ineffective assistance of counsel standard from
 
 Cronic,
 
 found counsel ineffective, and remanded for a new trial.
 

 The United States Supreme Court granted certiorari review of this Court’s decision in
 
 Nixon III
 
 and held that claims of ineffective assistance of counsel based on counsel’s concession of guilt to the crime charged, even without the defendant’s consent, are to be analyzed under the principles enunciated in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 See Florida v. Nixon,
 
 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). On remand, we determined all of Nixon’s ineffective assistance of counsel claims under the
 
 Strickland
 
 standard and addressed the other issues raised in Nixon’s 3.850 appeal and habeas petition. We affirmed the trial court’s de
 
 *140
 
 nial of postconviction relief, and we denied habeas relief.
 
 See Nixon v. State,
 
 932 So.2d 1009 (Fla.2006).
 

 Pursuant to Florida Rules of Criminal Procedure 3.203(d)(4) and 3.851, Nixon filed a timely motion claiming that his conviction and sentence of death are contrary to the reasoning and holding in
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (establishing that the Eighth Amendment prohibits the execution of the mentally retarded). Moreover, Nixon contended that section 921.137, Florida Statutes (2002), as interpreted in
 
 Cherry v. State,
 
 959 So.2d 702 (Fla.),
 
 cert. denied,
 
 — U.S. -, 128 S.Ct. 490, 169 L.Ed.2d 344 (2007), violates both the United States Constitution and the Florida Constitution.
 

 The Evidentiary Hearing
 

 The trial court conducted a two-day evi-dentiary hearing on Nixon’s mental retardation claim. At the hearing, the defense presented the expert testimony of Dr. Denis Keyes. The State presented the expert testimony and report of Dr. Gregory A. Prichard. In substantial part the evidence indicates that between 1974 and 1992, various doctors administered the Wechsler Intelligence Scale for Children test (WISC) and the Wechsler Adult Intelligence Scale test (WAIS) to Nixon. Nixon’s IQ scores based on these tests were 88, 73, and 72.
 

 Dr. Denis Keyes
 

 In 1993, Dr. Denis Keyes, an Associate Professor of Special Education at the College of Charleston in South Carolina, examined Nixon on behalf of the defense. Dr. Keyes tested Nixon’s intellectual functioning by utilizing the Stanford-Binet Intelligence Scale test, Fourth Edition. Dr. Keyes determined Nixon’s IQ to be 68. At the time Dr. Keyes examined Nixon there was no valid test of malingering. Based on Nixon’s test performance, Dr. Keyes opined that he performed at a significantly subaverage intellectual level.
 

 Dr. Keyes further concluded that there were known risks that Nixon was mentally retarded starting in early childhood. These known risks included: Nixon’s mother’s drinking, diet, and infrequent visits to the doctor during her pregnancy; Nixon’s malnourishment and exposure to nicotine and pesticide during his childhood; Nixon’s social and practical deficiencies; and Nixon’s psychological, physical, and sexual abuse suffered at the hands of his family.
 

 Dr. Keyes also opined that there was extensive evidence of Nixon’s difficulty with adaptive skills. He noted that Nixon had great difficulty in keeping up with others and learning basic information as a child. Dr. Keyes cited Nixon’s poor communication skills, difficulty in understanding basic mathematical concepts, poor achievement test results, repetitive behavior of making the same mistakes over and over, and the reports from Nixon’s prior teachers stating he should be placed in a special education program as evidence of Nixon’s subaverage intellectual functioning as a child. From his testing and observations, Dr. Keyes concluded that the onset of Nixon’s low intellectual functioning and adaptive deficits occurred before age eighteen. Therefore, Dr. Keyes concluded that Nixon was mentally retarded at the time of the crime and was currently (in 2006) evidencing adaptive dysfunctioning.
 

 Dr. Gregory A. Prichard
 

 In 2006, Dr. Gregory Prichard, a clinical psychologist, examined Nixon for the State. To determine Nixon’s intellectual functioning, Dr. Prichard administered the WAIS III and the Test for Memory Malingering, also known as the WRAT-3 or TOMM. As a result of these tests, Dr. Prichard found Nixon’s full scale IQ to be
 
 *141
 
 80. He found no indication that Nixon was malingering.
 

 After reviewing Nixon’s 1974 intelligence test, which was conducted when Nixon was twelve or thirteen years old, Dr. Prichard stated the test indicated an IQ full scale score of 88. Dr. Prichard found that there was no evidence that questioned the validity of the 1974 IQ score. Thus, Dr. Prichard opined that Nixon could not demonstrate onset of mental retardation before eighteen years of age. Based on his evaluations, Dr. Prich-ard concluded that Nixon is not mentally retarded. He further indicated there was no need to address the adaptive behavior issue as part of his assessment because Nixon’s IQ did not fall within the mental retardation range.
 

 After hearing the testimony and reviewing the evidence, the trial court concluded that Nixon did not establish mental retardation under either the clear and convincing or the preponderance of the evidence standard. Nixon appeals that decision, raising the issues discussed below.
 

 II. ANALYSIS
 

 Nixon makes the following arguments applicable to his mental retardation claim: (1) this Court should reconsider its decision in
 
 Cherry v. State,
 
 959 So.2d 702 (Fla.2007); (2) the trial court’s fact-finding, which was infected by legal error, is entitled to no deference; (3) the trial court violated
 
 Atkins
 
 by adding a “culpability” test; (4) the trial court violated
 
 Atkins
 
 by using Nixon’s confession to find him not mentally retarded; (5) he is entitled to a remand for a legally proper hearing because there is ample evidence in the record to support his claim of mental retardation; and (6) this Court must require that the proceedings on remand be freed from several erroneous legal rulings previously made by the trial court.
 

 In 2001, the Florida Legislature enacted section 921.137, Florida Statutes (2001), which barred the imposition of a death sentence on the mentally retarded and established a method for determining which capital defendants are mentally retarded.
 
 See
 
 § 921.137, Fla. Stat. (2001). The following year, the United States Supreme Court issued its opinion in
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), holding that execution of mentally retarded offenders constitutes “excessive” punishment under the Eighth Amendment. In response to
 
 Atkins
 
 and section 921.137, we promulgated Florida Rule of Criminal Procedure 3.203, which specifies the procedure for raising mental retardation as a bar to a death, sentence. Pursuant to both section 921.137 and rule 3.203, a defendant must prove mental retardation by demonstrating: (1) significantly subaverage general intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen.
 
 See
 
 § 921.137(1), Fla. Stat. (2007); Fla. R.Crim. P. 3.203(b).
 

 The trial court concluded that Nixon failed to establish that he is ineligible for the death penalty due to mental retardation. We affirm the trial court’s determination that Nixon is not mentally retarded. When reviewing mental retardation determinations, we must decide whether competent, substantial evidence supports the trial court’s findings.
 
 See Cherry,
 
 959 So.2d at 712 (citing
 
 Johnston v. State,
 
 960 So.2d 757 (Fla.2006)). We do not “reweigh the evidence or second-guess the circuit court’s findings as to the credibility of witnesses.”
 
 Brown v. State,
 
 959 So.2d 146, 149 (Fla.2007) (citing
 
 Trotter v. State,
 
 932 So.2d 1045, 1049 (Fla.2006)). However, we review the trial court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 
 *142
 

 Cherry Decision
 

 Nixon first argues that this Court’s interpretation of section 921.137 in
 
 Cherry,
 
 which requires a defendant to have an IQ score of 70 or below, violates
 
 Atkins.
 

 [4]
 

 Nixon asserts that because the Supreme Court noted in
 
 Atkins
 
 that the consensus in the scientific community recognizes an IQ between 70 and 75 or lower, states are only permitted to establish procedures to determine whether a capital defendant’s IQ is 75 or below on a standardized intelligence test. Nixon’s claim is without merit.
 
 [5]
 
 In
 
 Atkins,
 
 the Supreme Court recognized that various sources and research differ on who should be classified as mentally retarded. Accordingly, the Court left .to the states the task of setting specific rules in their statutes.
 
 See Atkins,
 
 536 U.S. at 317, 122 S.Ct. 2242 (“As was our approach in
 
 Ford v. Wainwright[,
 
 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed. 2d 335 (1986)] with regard to insanity, ‘we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.’ ”) (citations omitted). This State in section 921.137(1) defines subaver-age general intellectual functioning as “performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the Agency for Persons with Disabilities.” We have consistently interpreted this definition to require a defendant seeking exemption from execution to establish he has an IQ of 70 or below.
 
 See, e.g., Jones v. State,
 
 966 So.2d 319, 329 (Fla.2007) (“[U]nder the plain language of the statute, ‘significantly subaverage general intellectual functioning’ correlates with an IQ of 70 or below.”);
 
 Zack v. State,
 
 911 So.2d 1190, 1201 (Fla.2005) (finding that to be exempt from execution under
 
 Atkins,
 
 a defendant must establish that he has an IQ of 70 or below).
 

 Nixon further asserts that our interpretation of section 921.137 in
 
 Cherry
 
 creates an irrebuttable presumption that no one with an IQ over 70 is mentally retarded. Nixon claims that we created an irrebuttable presumption because once we concluded that Cherry’s IQ score was 72 our inquiry terminated, i.e., we did not consider the two other prongs of the mental retardation determination.
 
 See Cherry,
 
 959 So.2d at 714. We have consistently interpreted section 921.137(1) as providing that a defendant may establish mental retardation by demonstrating all three of the following factors: (1) significantly subaver-age general intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen.
 
 See, e.g., Jones, 966
 
 So.2d at 325;
 
 Johnston,
 
 960 So.2d at 761. Thus, the lack of proof on any one of these components of mental retardation would result in the defendant not being found to suffer from mental retardation.
 

 Nixon further asserts that our interpretation of section 921.137(1) does not provide constitutionally adequate procedures to determine mental retardation. More specifically, Nixon claims that in
 
 Cherry,
 
 we interpreted section 921.137(1)
 
 *143
 
 to create fact-finding procedures that preclude a defendant from presenting relevant material. Nothing in
 
 Cherry
 
 or section 921.137 precludes a defendant from presenting any evidence that is germane to the issues involved in a mental retardation claim. Section 921.137(1) and rule 3.203 provide defendants with notice of the type of evidence that is relevant to the issues and that will be considered by a trial court. In addition defendants are given an opportunity to present any relevant evidence to the court. This procedure was followed in this case. After an evidentiary hearing, the trial court issued a final order that thoroughly explained its decision, finding that Nixon had not established that he should be excluded from the death penalty by reason of mental retardation.
 

 The trial court informed Nixon of his opportunity to present his case, provided an evidentiary hearing, determined Nixon’s mental retardation claim on the basis of the examinations performed by two psychiatrists, and provided Nixon with an adequate opportunity to submit expert evidence in response to the report and testimony of the court-appointed expert. We find that Nixon was included in the truth-seeking process and had a full and fair opportunity to present evidence relevant to his mental retardation claim and to challenge the state-appointed psychiatrist’s opinions. Because the statute, rule, and caselaw outline adequate procedures for the presentation of mental retardation claims, Nixon is not entitled to relief on this issue.
 

 Nixon further contends that this Court’s definition of mental retardation violates both the United States and Florida Constitutions because the definition of mental retardation in section 921.137, as construed in
 
 Cherry,
 
 is inconsistent with the constitutional bar on the execution of mentally retarded persons. In
 
 Jones v. State,
 
 966 So.2d 319, 326 (Fla.2007), we found that Florida’s definition of mental retardation is consistent with the American Psychiatric Association’s diagnostic criteria for mental retardation.
 
 [6]
 
 Moreover, in
 
 Atkins,
 
 the Supreme Court noted that the statutory definitions of mental retardation throughout the country are not identical to the one outlined in
 
 Atkins
 
 but generally conform to the clinical definitions set forth in the case.
 
 See
 
 536 U.S. at 317 n. 22, 122 S.Ct. 2242. Florida’s statutory definition of mental retardation is not identical but conforms to the one outlined in
 
 Atkins. See id.
 
 at 309 n. 3, 122 S.Ct. 2242; § 921.137(1), Fla. Stat. (2007). Nixon’s claim involving the definition of mental retardation is also without merit.
 

 Trial Court’s Factfinding
 

 Nixon contends that the trial court dismissed Dr. Keyes’s testimony based on this Court’s holding in
 
 Cherry.
 
 Nixon argues that because
 
 Cherry
 
 does not set forth the governing legal standard, the trial court’s factual determinations were
 
 *144
 
 induced by an erroneous view of the law. This argument is yet another attack on Florida’s definition of mental retardation and the trial court’s application of this definition to the facts of this case. As we previously stated, the trial court followed the correct procedure in determining Nixon’s claim. Section 921.137(1) sets forth the governing legal standard and rule 8.203 outlines the procedural requirements for mental retardation claims. The trial judge followed the statute, rule, and case-law, then he carefully evaluated the testimony from the two experts. He found the testimony of Dr. Prichard more credible than that of Dr. Keyes and concluded that Nixon was not mentally retarded. Resolving all conflicts in the evidence and all reasonable inferences in favor of the trial court’s decision, we find there is competent, substantial evidence to support the trial court’s determination that Nixon does not meet the criteria for mental retardation.
 

 Diminished Culpability
 

 Nixon next asserts that the trial court erred in considering his impulsiveness and suggestibility in making a mental retardation determination. In
 
 Atkins,
 
 the Supreme Court addressed both impulsiveness and suggestibility as it relates to findings of mental retardation. The Court said:
 

 Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to
 
 control impulses,
 
 and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but
 
 there is abundant evidence that they often act on impulse
 
 rather than pursuant to a premeditated plan, and that in group settings
 
 they are followers rather than leaders.
 
 Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.
 

 536 U.S. at 318, 122 S.Ct. 2242 (footnotes omitted) (emphasis added). In this case the trial court was not using impulsivity and suggestibility to determine whether Nixon met the diagnostic criteria for mental retardation. Instead, the court was simply addressing why impulsivity or suggestibility was not applicable to this case. The trial court said that “[t]he record in Mr. Nixon’s case refutes any inference that impulsivity or suggestibility contributed in any way to Mr. Nixon’s crime.” The court reasoned that impulsivity or suggestibility was not relevant in this case because the crime was not impulsive but was committed through a series of deceptions, with attempts to destroy any evidence of the crime, and by a lone perpetrator. The trial court did not err in reviewing the role impulsivity or suggestibility played in Nixon’s crime.
 

 Confession
 

 Nixon argues the trial court erred by using his confession to find him not mentally retarded. We disagree. The trial court determined that Nixon was not mentally retarded by applying
 
 Atkins,
 
 section 921.137, rule 3.203, and this Court’s precedent on mental retardation. In its order, the court simply noted that Nixon’s lengthy confession, given very soon after the crimes, also indicated a total absence of impulsivity and suggestibility.
 

 Trial Court’s Conclusion
 

 Nixon next argues that the record contains ample evidence in which a fact-finder could determine that he is mentally retarded. Thus, he argues that the trial court
 
 *145
 
 erred by not finding him mentally retarded. As stated earlier, we review mental retardation issues to determine whether competent, substantial evidence supports the trial court’s determination.
 
 See Cherry,
 
 959 So.2d at 712 (citing
 
 Johnston,
 
 960 So.2d 757). We have reserved to the trial court the determination of the credibility of witnesses.
 
 See Trotter,
 
 932 So.2d at 1050 (citing
 
 Windom v. State,
 
 886 So.2d 915, 927 (Fla.2004)). The trial court found “Dr. Keyes’ historical cumulative average scoring approach is not persuasive and the persuasive effect of this approach is outweighed by Dr. Pritchard’s unrebutted testimony that Mr. Nixon scored 80 on a test validly administered last year.” The trial court further found that Dr. Keyes’ score could have resulted from Nixon’s malingering, that Nixon’s historical scores were consistent with Dr. Prichard’s measurement of an IQ of 80, and that Dr. Keyes’ approach of rescoring and averaging the current and historical scores was inappropriate and inconsistent with both the plain language of section 921.137 and this Court’s precedent. Thus, the trial court determined that Nixon did not meet the first prong of the mental retardation determination. We affirm the trial court’s determination that Nixon does not satisfy the criteria for mental retardation.
 

 Burden of Proof
 

 Nixon argues that the trial court erred by requiring him to prove his mental retardation. Nixon opines that the State is required to prove that he is not mentally retarded beyond a reasonable doubt. Contrary to this assertion, we have consistently held that it is the defendant who must establish the three prongs for mental retardation.
 
 See, e.g., Cherry,
 
 959 So.2d at 711; Fla. R.Crim. P. 3.203(e). Moreover, Nixon argues that if he bears the burden of showing his mental retardation, the appropriate standard is preponderance of the evidence. However, section 921.137(4) specifically states:
 

 At the final sentencing hearing, the court shall consider the findings of the court-appointed experts and consider the findings of any other expert which is offered by the state or the defense on the issue of whether the defendant has mental retardation.
 
 If the court finds, by clear and convincing evidence, that the defendant has mental retardation as defined in subsection (1),
 
 the court may not impose a sentence of death and shall enter a written order that sets forth with specificity the findings in support of the determination.
 

 (Emphasis added.) We need not address this claim because the circuit court held that Nixon could not establish his mental retardation under either the clear and convincing evidence standard or the preponderance of the evidence standard.
 
 See Jones,
 
 966 So.2d at 329-30 (noting that we did not need to address the claim because the trial court found that “Jones did not present evidence sufficient to meet even the lesser standard of preponderance of the evidence”) (citing
 
 Trotter,
 
 932 So.2d at 1049 n. 5).
 

 Nixon also claims that under
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), due process requires that a jury find beyond a reasonable doubt any facts that would make a defendant eligible for the death penalty. We have rejected this argument and held that a defendant “has no right under
 
 Ring
 
 and
 
 Atkins
 
 to a jury determination of whether he is mentally retarded.”
 
 Arbelaez v. State,
 
 898 So.2d 25, 43 (Fla.2005);
 
 see also Rodriguez v. State,
 
 919 So.2d 1252, 1267 (Fla.2005);
 
 Bottoson v. Moore,
 
 833 So.2d 693 (Fla.2002).
 

 The defendant contends the trial court erroneously rejected his argument that rule 3.203 does not provide a constitu
 
 *146
 
 tionally adequate procedure for resolving mental retardation claims by persons whose death sentences were final before the Supreme Court decided
 
 Atkins.
 
 More specifically, Nixon argues that rule 3.203 extends due process and other constitutional guarantees only to those who have not yet been sentenced to death. The claim is meritless. Florida Rule of Criminal Procedure 3.203 adopts the statutory definition of mental retardation and recognizes that
 
 Atkins
 
 applies to any defendant currently on death row.
 
 See
 
 Fla. R.Crim. Pro. 3.203(d);
 
 Brown,
 
 959 So.2d at 147 n. 1 (citing
 
 Phillips v. State,
 
 894 So.2d 28, 39-40 (Fla.2004)).
 

 Lastly, Nixon asserts that the trial court erroneously denied him a hearing on his claim that mental illness bars his execution. We rejected this argument in
 
 Lawrence v. State,
 
 969 So.2d 294 (Fla.2007), and
 
 Connor v. State,
 
 979 So.2d 852 (Fla.2007). In
 
 Lawrence,
 
 we rejected the defendant’s argument that the Equal Protection Clause requires this Court to extend
 
 Atkins
 
 to the mentally ill.
 
 See
 
 969 So.2d at 300 n. 9. In
 
 Connor,
 
 we noted that “[t]o the extent that Connor is arguing that he cannot be executed because of mental conditions that are not insanity or mental retardation, the issue has been resolved adversely to his position.”
 
 Connor,
 
 979 So.2d at 867 (citing
 
 Diaz v. State,
 
 945 So.2d 1136, 1151 (Fla.)
 
 cert. denied,
 
 — U.S.-, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006) (indicating that neither the United States Supreme Court nor this Court has recognized mental illness as a per se bar to execution)). Accordingly, Nixon is not entitled to relief on this claim.
 

 III. CONCLUSION
 

 For the reasons discussed above, we affirm the trial court’s denial of Nixon’s postconviction motion and the trial court’s determination that Nixon is not mentally retarded.
 

 It is so ordered.
 

 QUINCE, C.J., WELLS, PARIENTE, and LEWIS, JJ., and ANSTEAD, Senior Justice, concur.
 

 CANADY and POLSTON, JJ., did not participate.
 

 [1]
 

 . Nixon raised seven claims in connection with the guilt phase of the trial and eight claims in connection with the penalty phase.
 

 See Nixon v. State, 572
 
 So.2d 1336, 1338 (Fla.1990)
 
 (Nixon I).
 
 We discussed the following guilt-phase claims: (1) he was denied
 
 *139
 
 effective assistance of counsel when his trial counsel, without his record approval, conceded his guilt and sought leniency; (2) during closing argument the prosecutor made an impermissible “Golden Rule” argument when he told the jury “ ‘we have an obligation to make you feel just a little bit ... of what [the victim] felt’ (3) his absence during critical proceedings throughout the trial required a reversal; (4) the admission of an "unnecessarily large number of inflammatory photographs” of the victim in a charred state resulted in a fundamentally unfair proceeding; and (5) the trial court erred when it failed to establish the competency of a juror who was excused from jury service during the penalty phase of the trial due to emotional problems.
 
 See id.
 
 at 1338-43. We discussed the following penalty-phase claims: (1) Nixon's statement after his arrest concerning the removal of victim’s underwear was inadmissible because it was given without the full benefit of warnings under
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) the trial court erred in failing to instruct the jury on mitigating factors under sections 921.141(6)(b) and (6)(f), Florida Statutes (1985); (3) the trial court impermissibly refused to consider the mitigating evidence presented; and (4) the trial court erred when it refused to give a requested instruction informing the jury of the maximum sentences for kidnapping, robbery, and arson. See
 
 Nixon I, 572
 
 So.2d at 1343-45.
 

 [2]
 

 . Nixon raised seven issues on appeal.
 
 See Nixon v. State,
 
 932 So.2d 1009, 1014 n. 2 (Fla.2006) (listing issues).
 

 [3]
 

 . Nixon raised three issues in his habeas petition. We did not address those issues in
 
 Nixon II
 
 because we reversed based on the ineffective assistance of counsel claim.
 

 [4]
 

 . In
 
 Cherry,
 
 we noted that another jurisdiction considering a similar claim ¡found that "fourteen of the twenty-six jurisdictions with mental retardation statutes have a cutoff of seventy or two standard deviations below the mean.” 959 So.2d at 713 n. 8 (citing
 
 Bowling v. Commonwealth,
 
 163 S.W.3d 361, 373-74(Ky.) (upholding use of seventy IQ score cutoff),
 
 cert. denied,
 
 546 U.S. 1017, 126 S.Ct. 652, 163 L.Ed.2d 528 (2005)).
 

 [5]
 

 . Nixon makes a number of assertions questioning this Court’s
 
 Cheny
 
 decision. All of these arguments are versions of his main argument that an IQ of 70 or below should not be the standard and that such a standard is unconstitutional.
 

 [6]
 

 . The American Psychiatric Association's definition provides the following diagnostic criteria for mental retardation:
 

 A. Significantly subaverage intellectual functioning: an IQ of approximately 70 or below on an individually administered IQ test (for infants, a clinical judgment of significantly subaverage intellectual functioning).
 

 B. Concurrent deficits or impairments in present adaptive functioning (i.e., the person’s effectiveness in meeting the standards expected for his or her age by his or her cultural group) in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.
 

 C.The onset is before age 18 years.
 

 Jones v. State,
 
 966 So.2d 319, 326-27 (Fla.2007) (quoting American Psychiatric Association,
 
 Diagnostic and Statistical Manual of Mental Disorders
 
 49 (4th ed.2000)).