# Supreme Court of Florida

———————

No. SC15-1441

———————

**LEONARDO FRANQUI,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

———————

No. SC15-1630

———————

**LEONARDO FRANQUI,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 26, 2017]

PER CURIAM.

In these consolidated appeals, Leonardo Franqui challenges the summary denial of his successive motions to vacate judgments of conviction and sentence under Florida Rule of Criminal Procedure 3.851. This Court has jurisdiction

pursuant to article V, section 3(b)(1), of the Florida Constitution. Franqui contends he is entitled to an evidentiary hearing on his claim of intellectual disability[1] pursuant to the decision of the United States Supreme Court in Hall v. Florida, 134 S. Ct. 1986 (2014). For the reasons discussed below, we agree and remand both cases to the circuit court for a single evidentiary hearing.[2]

## FACTS AND PROCEDURAL BACKGROUND

Franqui was sentenced to death for the 1991 murder of Raul Lopez. See Franqui v. State, 699 So. 2d 1312, 1316 (Fla. 1997) (the Hialeah case). Franqui was separately sentenced to death for the 1992 murder of law enforcement officer Steven Bauer. See Franqui v. State, 804 So. 2d 1185, 1190-91 (Fla. 2001) (the

---

1. The term originally used in these proceedings was "mentally retarded." This terminology has been changed to "intellectually disabled," as recognized in the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM). Both the Florida Statutes and the Florida Rules of Criminal Procedure have been modified to conform to the change in terminology. Accordingly, throughout this opinion, we use the term "intellectually disabled."

2. Franqui also asserts that he is entitled to relief from his death sentences based upon the decisions in Hurst v. Florida, 136 S. Ct. 616 (2016), and Hurst v. State, 202 So. 3d 40 (Fla. 2016). Because we are remanding Franqui's cases for an evidentiary hearing on intellectual disability, we decline to address this claim at the present time.

North Miami case).[3]  We affirmed both sentences.  See Franqui, 699 So. 2d at

1329; Franqui, 804 So. 2d at 1199.

**The Hialeah Case**

During the initial postconviction proceedings in the Hialeah case, Franqui

alleged in a supplement that he was intellectually disabled and, therefore, could not

be executed pursuant to Atkins v. Virginia, 536 U.S. 304 (2002).  See Franqui v.

State, 59 So. 3d 82, 89-90 (Fla. 2011).  After the circuit court denied

postconviction relief, Franqui appealed; however, because the lower court had

failed to rule upon the intellectual disability claim, this Court relinquished

jurisdiction so that it could be addressed.  See id. at 90.  Thereafter, the circuit

court summarily denied the claim.  See id.  After the case was returned, this Court

reversed the summary denial and again relinquished jurisdiction with directions

that an evidentiary hearing be held.  See Franqui v. State, 14 So. 3d 238, 239 (Fla.

2009).  We directed the lower tribunal to consider the requirements delineated in

Cherry v. State, 959 So. 2d 702 (Fla. 2007), for an intellectual disability

determination under the applicable statute, which provided:

> As used in this section, the term "mental retardation" means
> significantly subaverage general intellectual functioning existing
> concurrently with deficits in adaptive behavior and manifested during

---

3. For ease of understanding, we refer to each case by the location where the murder occurred.  The Hialeah case is the subject of case number SC15-1441, and the North Miami case is the subject of case number SC15-1630.

the period from conception to age 18. The term "significantly subaverage general intellectual functioning," for the purpose of this section, means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the Agency for Persons with Disabilities. The term "adaptive behavior," for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.

§ 921.137(1), Fla. Stat. (2009). Based upon this language, we explained that

[The defendant] must establish that he has significantly subaverage general intellectual functioning. If significantly subaverage general intellectual functioning is established, [the defendant] must also establish that this significantly subaverage general intellectual functioning exists with deficits in adaptive behavior. Finally, he must establish that the significantly subaverage general intellectual functioning and deficits in adaptive behavior manifested before the age of eighteen.

Franqui, 14 So. 3d at 239 (alterations in original) (quoting Cherry, 959 So. 2d at 711). In Cherry, 959 So. 2d at 712-13, this Court held that a strict cutoff IQ score of 70 is required for a defendant to establish the significantly subaverage general intellectual functioning prong of intellectual disability. Under Cherry, where a defendant could not establish that he has an IQ of 70 or below, the court need not consider the remaining two prongs of the determination. See id. at 714.

Upon relinquishment, the circuit court appointed Dr. Enrique Suarez to evaluate Franqui for intellectual disability. Franqui subsequently notified the court that in 2003, Dr. Trudy Block-Garfield had conducted testing on Franqui at the request of Franqui's prior collateral counsel. She determined that Franqui's full-

- 4 -

scale IQ score on the Wechsler Adult Intelligence Scale—Third Edition (WAIS-III) was 75, and his composite score on the Stanford-Binet Intelligence Scale was 76. According to the report of Dr. Block-Garfield, "the DSM-IV does not consider an IQ of 75 as being in the mentally retarded range, rather it is in the Borderline range of functioning." In Dr. Block-Garfield's opinion, it was highly likely that Franqui's true IQ score fell between 71 and 80. Her report also touched upon adaptive behavior:

> Apart from actual IQ, there is also an adaptive level of functioning that must be considered. Mr. Franqui's functioning at the time of his arrest was certainly somewhat impaired. He had difficulties in maintaining a job, but the likelihood that this was due to an inability to function is somewhat limited. Rather this may have been attributable to his immaturity and general impulsive behavior. Certainly, he was in some fashion supporting a family which could not be accomplished by an individual who is mentally retarded. Immaturity was a factor and this still seems to be the case to some extent today.

Dr. Suarez's testing revealed a full-scale IQ score of 75 on the WAIS-IV. However, Dr. Suarez administered five symptom validity tests to determine if Franqui was giving his best efforts. He concluded that Franqui's scores indicated malingering with the intent to perform extremely poorly on the tests administered and strongly suggested that the score on the WAIS-IV underestimated Franqui's actual abilities.

Franqui filed a motion asking the circuit court to declare unconstitutional this Court's interpretation in Cherry of intellectual disability on the basis that it

violates <u>Atkins</u>.  In the motion, he acknowledged that the circuit court was "bound by the Florida Supreme Court's decision in <u>Cherry</u> and that, under the analysis of <u>Cherry</u>, he cannot meet the first prong of the mental retardation test as a matter of law."  He further recognized that without a declaration of unconstitutionality, the circuit court would be required to deny his claim under <u>Cherry</u>.

During a status hearing, counsel for Franqui stated that while experts could testify on the adaptive deficits prong of intellectual disability, "if you don't meet [the IQ] prong, that's the end of the story, that's where we find ourselves now." The circuit court denied Franqui's motion to declare the Court's interpretation in <u>Cherry</u> of intellectual disability unconstitutional.  During the evidentiary hearing, the parties stipulated into evidence the reports of Dr. Block-Garfield and Dr. Suarez and also stipulated to the fact that if these experts were called to testify, they would testify consistently with the contents of their reports.  The circuit court subsequently denied Franqui's <u>Atkins</u> claim.

Upon return of the case, Franqui asked this Court to revisit the decision in <u>Cherry</u> and also that of <u>Nixon v. State</u>, 2 So. 3d 137 (Fla. 2009), which reached the same conclusion as <u>Cherry</u> on the strict cutoff IQ score of 70.  See <u>Franqui</u>, 59 So. 3d at 92.  We affirmed the denial of the intellectual disability claim and rejected Franqui's assertion that our interpretation of <u>Atkins</u> was unconstitutional.  See <u>id.</u> at 94.

**The North Miami Case**

In a successive postconviction motion filed in the North Miami case,

Franqui similarly contended that his death sentence violates Atkins. Franqui

asserted, in part, that Dr. Jethro Toomer testified during the trial in the Hialeah

case that Franqui was intellectually disabled based upon an IQ score of less than

60.[4] The State attached to its response to the motion the evaluations of Dr. Block-

Garfield and Dr. Suarez from the Hialeah case. After conducting a case

management hearing, the circuit court summarily denied the successive motion.

The court found that the Atkins claim was time-barred, and also that the issue of

intellectual disability had been litigated and resolved adversely to Franqui in the

Hialeah case. As to the latter conclusion, the circuit court stated that "[the]

Defendant cannot be mentally retarded in one case and not in the other, as that

would defy the definition of mental retardation."

On appeal, this Court affirmed the denial of Franqui's intellectual disability

claim, stating:

> [T]he only IQ tests that are acceptable for purposes of proving mental
> retardation are the Wechsler Intelligence Scale and the Stanford-Binet
> Intelligence Scale. See § 921.137(1), Fla. Stat.; Fla. R. Crim. P.
> 3.203(b); Fla. Admin. Code 65G–4.011. Here, Franqui alleged that
> his IQ score was under 70 based on a report prepared in 1993, but the
> test utilized to measure his IQ was not the Wechsler Intelligence Scale

---

4. Dr. Toomer also administered to Franqui the WAIS-Revised in 1993, and Franqui's full-scale IQ score on that test was 83. See Franqui, 59 So. 3d at 91.

or the Stanford-Binet Intelligence Scale. His scores on the acceptable IQ tests were above 70. See Franqui, 59 So. 3d at 92 (finding, based on the same evidence presented here, that the circuit court had competent, substantial evidence—two separate doctors found Franqui's IQ was above 75 on the rule-approved psychological examinations—to find that Franqui is not mentally retarded). In addition, he did not plead whether the mental retardation manifested before he was 18 years of age. Thus, Franqui cannot demonstrate that he is mentally retarded under Florida law.

Franqui v. State, 118 So. 3d 807, 2013 WL 2211675 *2 (Fla. 2013).

## The Present Cases

In 2014, the United States Supreme Court held that this Court's interpretation in Cherry of Florida's intellectual disability statute was unconstitutional because it created an unacceptable risk that intellectually disabled individuals would be executed. See Hall, 134 S. Ct. at 1990, 1994. The Supreme Court held that the standard error of measurement (SEM) must be taken into account in determining whether an individual meets the first prong of intellectual disability. See id. at 2001 ("[I]n using these scores to assess a defendant's eligibility for the death penalty, a State must afford these test scores the same studied skepticism that those who design and use the tests do, and understand that an IQ test score represents a range rather than a fixed number."). The Supreme Court further noted that a person with an IQ score over 70 may have such severe adaptive deficits that his actual functioning is comparable to someone with a lower IQ score. See id. at 2001. Therefore, the Supreme Court concluded that the

- 8 -

determination of intellectual disability must be a "conjunctive and interrelated assessment" and ultimately held that where a defendant's IQ score is 75 or below, he must be given the opportunity to present evidence of intellectual disability, "including deficits in adaptive functioning over his lifetime." Id.

Franqui filed successive motions for postconviction relief in his capital cases contending that this Court's prior rejections of his claim were based upon Cherry, an interpretation of the intellectual disability statute which the Supreme Court found unconstitutional in Hall. Franqui asserted that he was entitled to an additional evidentiary hearing on his claim. As previously discussed, the circuit court summarily denied both motions.[5] In the Hialeah case, the court concluded that Hall has "no effect on the individuals who were previously found not to be . . . intellectually disabled[] due to a lack of deficits in adaptive functioning." The court noted that, even if Franqui's IQ score satisfied the first prong of intellectual disability after taking the SEM into account, Dr. Block-Garfield's report did not find deficits in adaptive functioning. The circuit court then stated:

> His prior motion was denied by this court for failure to meet any of the prongs. IQ was only one of [the] factors considered, as noted by the prior order. Defendant had a hearing and an opportunity to present evidence on all 3 prongs. His own expert did not find deficits in adaptive functioning, as he supported his family. Defendant also

---

5. The same judge presided over both cases.

failed to meet the third prong. He is not entitled to <u>another</u> evidentiary hearing.

In the North Miami case, the circuit court concluded that <u>Hall</u> did not create a new right to bring a claim of intellectual disability. The court also held that Franqui's motion was time-barred. The court attached to its denial order the report of Dr. Block-Garfield from the Hialeah case.

These appeals follow.

## ANALYSIS

"Because a postconviction court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review." <u>Marek v. State</u>, 8 So. 3d 1123, 1127 (Fla. 2009). As a preliminary matter, in <u>Walls v. State</u>, 41 Fla. L. Weekly S466 (Fla. Oct. 20, 2016), we held that the Supreme Court's decision in <u>Hall</u> is retroactive. Therefore, <u>Hall</u> is applicable to Franqui. Accordingly, at issue in these cases is whether the circuit court should have granted Franqui an evidentiary hearing on his intellectual disability claim based upon the holding in <u>Hall</u> that where a defendant's IQ score is 75 or below after taking into account the SEM, he must be afforded the opportunity to present evidence of intellectual disability, "including deficits in adaptive functioning over his lifetime." 134 S. Ct. at 2001. <u>See also</u> <u>Oats v. State</u>, 181 So. 3d 457, 467-68 (Fla. 2015) (noting that pursuant to <u>Hall</u>, "courts must consider all three prongs in

- 10 -

determining an intellectual disability, as opposed to relying on just one factor as dispositive . . . [B]ecause these factors are interdependent, if one of the prongs is relatively less strong, a finding of intellectual disability may still be warranted based on the strength of other prongs.").

In the Hialeah case, Franqui obtained a range of full-scale IQ scores from qualifying tests. Those scores are: 75 on the WAIS-IV conducted by Dr. Suarez in 2009, 75 and 76 on the WAIS-III and the Stanford-Binet conducted by Dr. Block-Garfield in 2003, and 83 on the WAIS-Revised conducted by Dr. Toomer in 1993. It is not disputed that during his initial postconviction proceedings in the Hialeah case, Franqui received an evidentiary hearing on his claim of intellectual disability, but he asserts that an additional hearing is required so that the claim can be reviewed within the parameters of Hall and in light of the fact that Cherry was abrogated in that decision. We agree.

The rationale for granting a second evidentiary hearing is articulated in Walls:

> [I]t is clear that although Walls has had an earlier evidentiary hearing as to intellectual disability and was allowed to present evidence of all three prongs of the test, he did not receive the type of holistic review to which he is now entitled. Also, Walls' prior hearing was conducted under standards he could not meet because he did not have an IQ score below 70—a fact which may have affected his presentation of evidence at the hearing. Because Walls' prior evidentiary hearing was directed toward satisfying the former definition of intellectual disability and was reviewed by the circuit court with the former IQ

- 11 -

> score cutoff rule in mind, we remand for the circuit court to conduct a
> new evidentiary hearing as to Walls' claim of intellectual disability.

41 Fla. L. Weekly at S469 (emphasis added). In Franqui, 14 So. 3d at 239, we specifically instructed the circuit court in the Hialeah case to hold an evidentiary hearing pursuant to Cherry, which implemented a strict cutoff IQ score of 70 and also held that if the first prong of intellectual disability was not satisfied, the second and third prongs need not be addressed. See Cherry, 959 So. 2d at 713-14.

It appears that during the evidentiary hearing, Franqui may have significantly limited his presentation because he knew that he could not meet the first prong of intellectual disability due to the fact that none of his scores on the approved tests was 70 or below. Counsel for Franqui articulated the belief that reaching the second and third prongs of intellectual disability would be futile because of Cherry. As previously discussed, counsel stated that while experts could testify with regard to the adaptive deficits prong, "if you don't meet [the IQ] prong, that's the end of the story, that's where we find ourselves now." Thus, it appears that Franqui did not offer as complete a presentation on the second and third prongs of the intellectual disability determination as he might have under the standard articulated in Hall.

Further, the circuit court's discussion of the adaptive deficits prong in its denial order was very brief and relied on Dr. Block-Garfield's discussion of adaptive deficits, which was also very brief:

- 12 -

> Dr. Block-Garfield's report also states that while his functioning at the time of arrest was impaired, it was likely due to the Defendant's immaturity and impulsive behavior. She further states that: "Certainly, he was in some fashion supporting a family which could not be accomplished by an individual who is mentally retarded."

Because the circuit court was aware that pursuant to <u>Cherry</u>, Franqui's intellectual disability claim failed because none of his IQ scores on the WAIS and Stanford-Binet tests was below 70, the circuit court may have determined that it was unnecessary to consider or discuss the second and third prongs in detail. If this is the case, then Franqui did not receive the "holistic" evaluation of his claim that he is entitled to under <u>Hall</u>. Requiring the circuit court to hold a second evidentiary hearing will afford Franqui a full opportunity to present evidence in support of his intellectual disability claims.

## CONCLUSION

Based upon the foregoing, we reverse the circuit court's summary denials in the Hialeah and North Miami cases and remand for the court to conduct a single evidentiary hearing on Franqui's claims of intellectual disability.[6]

It is so ordered.

LABARGA, C.J., and PARIENTE, and QUINCE, JJ., and PERRY, Senior Justice, concur.
LEWIS, CANADY, and POLSTON, JJ., dissent.

---

6. Counsel for Franqui agree that only one evidentiary hearing is necessary to resolve this claim in both cases.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Two Cases:

Appeals from the Circuit Court in and for Miami-Dade County,
Stanford Blake, Judge - Case Nos. 131992CF006089B000XX & 131992CF002141B000XX

Todd Gerald Scher of the Law Office of Todd G. Scher, P.L., Dania Beach, Florida; and Martin J. McClain of McClain & McDermott, P.A., Wilton Manors, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Melissa Jean Roca, Assistant Attorney General, Miami, Florida,

for Appellee