*1005 PARIENTE, J.,
concurring in part and dissenting in part.
I concur that Snelgrove is entitled to relief pursuant to Hurst. Majority op. at 1004. I dissent, however, as to the majority’s conclusion that “Snelgrove is not entitled to postconviction relief regarding his claim of intellectual disability.” Majority op. at 1004. Instead, I would remand for a new evidentiary hearing on Snelgrove’s possible intellectual disability in light of the fact that the first evidentiary hearing on that matter occurred in 2009, prior to the United States Supreme Court’s decision in Hall v. Florida, — U.S. —, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014). As I previously explained, “Hall changed the manner in which evidence of intellectual disability must be considered.” Walls v. State, 2016 WL 6137287, at *7, 213 So.3d 340, 346 (Fla. Oct. 20, 2016) (Pariente, J., concurring). Courts must now “consider all three prongs in determining an intellectual disability, as opposed to relying on just one factor as dispositive.... [B]ecause these factors are interdependent, if one of the prongs is relatively less strong, a finding of intellectual disability may still be warranted based on the strength of the other prongs.” Oats v. State, 181 So.3d 467, 467-68 (Fla. 2015).
When this Court last affirmed the trial court’s denial of Snelgrove’s intellectual disability claim, the Court cited Cherry v. State, 959 So.2d 702 (Fla. 2007), and the trial court relied on Nixon v. State, 2 So.3d 137, 142 (Fla. 2009), which affirmed the bright-line cutoff IQ score of 70 for determining intellectual disability as stated in Cherry. See Snelgrove v. State, 107 So.3d 242, 252 (Fla. 2012). Hall has since “specifically disapproved of the bright-line cutoff of 70 for IQ scores stated by this Court in Cherry,” in assessing the first prong of the test for intellectual disability. Thompson v. State, 208 So.3d 49, 50 (Fla. 2016). Thus, while the trial court had evidence from Snelgrove’s and the State’s experts that Snelgrove’s full scale IQ scores ranged from 70 to 75, “it is impossible to know the true effect of this Court’s holding in Cherry on the circuit court’s review of the evidence presented at [Snelgrove’s] intellectual disability hearing.” Id. at 60.
Further, the majority apparently bases its conclusion that Snelgrove’s pre-Hall intellectual disability hearing complied with the commands of Hall because the trial court permitted Snelgrove “to present evidence of all three prongs of the test for an intellectual disability.” Majority op. at 1004. Yet, as this Court explained in Thompson, “it is not enough that a defendant be allowed to present evidence on all three prongs of the intellectual disability test.” 208 So.3d at 59. The inquiry must instead focus on whether the court conducted a “conjunctive and interrelated assessment” of all prongs. Id. (quoting Hall, 134 S.Ct. at 2001).
I acknowledge that a defendant is not always entitled to another hearing on intellectual disability following Hall. However, in this case, there is a risk that the trial court and this Court were unduly influenced by an IQ score exceeding the prior bright-line cut off score of 70, requiring a new evidentiary hearing or at the very least a reevaluation of the evidence previously presented. Indeed, a review of the trial court’s order rejecting Snelgrove’s intellectual disability claim reveals that the trial court prefaced its analysis by emphasizing that this Court “has consistently interpreted” the statutory definition of significantly subaverage general intellectual functioning “to require a defendant seeking exemption from execution to establish he has an IQ of 70 or below.” State v. Snelgrove, No.: 00-323-CFFA, 2009 WL 9557139 (Fla. 7th Cir. July 2, 2009) (quoting Nixon, 2 So.3d at 142) (denying Defendant’s Motion to Prohibit the Imposition of *1006 the Sentence of Death/Mental Retardation).
In fact, the trial court’s order denying Snelgrove’s intellectual disability claim reveals that the court relied on the State’s expert, Dr. Prichard, who testified that the defendant had a “full scale IQ of 75 and therefore was not mentally retarded.” As we explained in Walls, 2016 WL 6137287 at *6, 213 So.3d at 347, “[b]ecause [the defendant’s] prior evidentiary hearing was directed toward satisfying the former definition of intellectual disability and was reviewed by the circuit court with the former IQ score cutoff rule in mind,” remanding for a new evidentiary hearing on intellectual disability was necessary. It is also necessary here. Accordingly, I would conclude that a new intellectual disability hearing should be held prior to the commencement of the penalty phase to ensure that Snelgrove “receive[s] the type of conjunctive and interrelated assessment that Hall requires.” Thompson, 208 So.3d at 59.